## Wallace's Estate.    Russell's Appeal.

59  401
131  93
59  401
197 149

1. Taxes assessed on land in Allegheny county from 1852 to 1858 had been paid over by the collector, but were unpaid by the owner. In 1859, the owner confessed judgment to the collector for their amount as collateral, and shortly afterwards died. The land was sold in 1864 by order of the Orphans' Court; there had always up to the sale been sufficient personal property on the premises to satisfy the taxes. *Held*, that the collector had no priority over liens which preceded his judgment.

2. Under the Act of February 3d 1824 relating to Philadelphia taxes, extended by Act of April 5th 1844 to Allegheny county, the taxes were a lien prior to all others charged on the premises after the passage of the act, to preserve which registering the taxes was not necessary.

3. The provisions of the act requiring a registry of taxes are merely directory, and a failure to comply does not affect the validity or duration of the lien.

4. The lien is for the benefit of the party entitled to the taxes as security; and can be discharged only by payment.

5. When a collector pays over the taxes to the proper officer entitled to receive them the lien is discharged.

6. When the taxes have been paid by a surety, if justice requires it, the lien may be kept afoot for his benefit.

7. A tenant or stranger whose goods may have been taken to pay taxes, will be treated as a surety and substituted to the rights of the party to whom the tax was coming.

8. A collector paying the taxes cannot be regarded as a surety. He should collect and pay over without delay; he has no authority to grant indulgence or extend the time of payment.

9. Subrogation is founded on equity and benevolence, and is not to be allowed except in a clear case, and where it works no injustice to others.

November 5th 1868.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Allegheny county* : In the estate of Thomas Wallace, deceased: No. 133, to October and November Term 1868.

The appeal in this case was by Caleb Russell, a lien-creditor of the decedent.

The decedent died in 1859 or 1860. On the final settlement of the account of William P. Baum, his administrator, there appeared to be a balance of $1514.26 due the estate. The account was referred to William G. Hawkins, Jr., as auditor for distribution; who found and reported that the balance for distribution, after deducting the expenses of audit, was $1400. Of this the sum of $523.15 is the proceeds of real estate. The only claimants contesting the distribution of that fund were Russell, the appellant, and R. J. Smith, the appellee. The auditor further reported that on the 24th of August 1858 Smith recovered a judgment against the decedent which at the time of the audit amounted, principal and interest, to $426.48, and that on the 25th of March 1859 Russell obtained a judgment by confession

9 P. F. SMITH—26

against the decedent, on which at the date of the audit the sum of $461.19 was due. The judgment was absolute on its face, but was intended as collateral security for certain state, city and municipal taxes due on real estate of the decedent, known as the "Bank Exchange property," Russell having been the tax collector. The taxes had been assessed on the property for the years from 1852 to 1858 inclusive. Russell, as collector, settled his duplicate for the taxes in due course, and paid them over. The Bank Exchange property was sold by order of the Orphans' Court on the 24th of October 1864, part of the proceeds of which is the fund in contest. During all the time from the assessment of the taxes up to the sale of the real estate, there was enough personal property on the premises to satisfy the claim for taxes.

Russell claimed before the auditor that the taxes were a lien on the real estate entitled to priority under the Act of February 3d 1824, Pamph. L. 18, the judgment being merely collateral.

The auditor reported :—　　　*　　*　　*　　*　　*　　*

"The Act of February 3d 1824, upon which the claim of Mr. Russell is based, makes taxes a lien on real estate, but provides a mode by which that lien shall be evidenced. The lien is the security for the taxes, as between the Commonwealth and the taxpayer ; but, in order to make that lien effectual, the statute has provided peremptorily that a public record be made of the debt. The protection is complete and effectual only when the manner of making that record has ·been strictly followed. The record is to be taken as the evidence of the indebtedness of the subject to the sovereign. It is there that purchasers and others are to look for protection against such claims.　　*　　*　　*　　*　　*

"Mr. Russell is therefore clearly in default, has slept on his rights too long, and forfeited his priority, if he ever had any.

"The Act of February 3d 1824 provided a perfect security for unpaid taxes. 'The lien' of said taxes 'shall have priority to and be fully paid and satisfied before any recognisance, &c., which the said real estate may become charged with or liable to ;' and the act points out a specific mode by which that lien shall be evidenced. No better or more simple security could be provided, and if Mr. Russell had followed its provisions, he would have been perfectly safe. But he chose a mode of proceeding of his own, and is to be taken as waiving the benefit of the act, and making the tax claim his individul claim. It may well be doubted whether he could be subrogated, under any circumstances, to the rights of the Commonwealth, as to priority.

"The record showed that the Commonwealth, whose claim the taxes were, had been fully paid and satisfied, and that Mr. Wallace was Mr. Russell's debtor to the extent of his judgment, and it showed no more.

"There is nothing in the Act of February 3d 1824 which

[Wallace's Estate.]

requires collectors to settle unpaid taxes out of their own pockets; and under the general tax law they may be exonerated from doing so. It was, therefore, a mere voluntary act on the part of Mr. Russell in paying these taxes."

The auditor awarded to Smith the amount of his judgment, and excluded Russell altogether.

The Orphans' Court confirmed the report upon exceptions. Russell appealed, and assigned the decree of confirmation for error.

The Act of February 3d 1824, §§ 1, 6, 8 Sm. L. 189, Purd. 747-8, pl. 1, 4, referred to in the auditor's report, related to taxes in Philadelphia, and was extended by Act of April 5th 1844, Pamph. L. 199, to Allegheny county. The Act of 1824 makes taxes a lien on real estate which shall have priority to any other charge created after the passage of the act; it requires the collector, when taxes are in arrear on the 1st of April after they have become due, to deliver to the commissioners a list of the taxes and the names of persons owing them, &c., which is to be filed in the commissioners' office; they are required to keep a register of such taxes and furnish a transcript on demand; collectors are authorized at any time to levy and sell personal property found on the premises taxed; and the persons whose goods are so levied on, or who pay the taxes under the act, may recover the amount from the owner.

*W. W. Thompson*, for appellant.—The provisions for registering taxes are merely directory: Pennock *v.* Hoover, 5 Rawle 317; Parker's Appeal, 8 W. & S. 451. The lien is unlimited: 2 Tr. & H. Practice 524; Aurand's Appeal, 10 Casey 151; Konigmaker *v.* Brown, 2 Harris 273; Acts of 1824 and 1844.

*M. W. Achison*, for appellee.—Taxes are not an indefinite lien: Burd *v.* Ramsay, 9 S. & R. 109; In re Wilson, 4 Barr 164. Liens not appearing upon record are discountenanced: Kauffelt *v.* Bower, 7 S. & R. 73.

The opinion of the court was delivered, February 23d 1869, by
WILLIAMS, J.—The appellant was the collector of taxes in the First Ward, Pittsburg, from 1852 to 1858 inclusive, and, during this time, state, county and city taxes were annually assessed on the Bank Exchange property, owned by Thomas. Wallace, and included in the duplicates that came into his hands for collection. He settled his duplicates in regular course during the period for which he was collector. In 1859 Wallace confessed judgment in his favor as collateral security for the taxes then remaining unpaid, and died in the same or following year, largely indebted. In 1864 the Bank Exchange property, of which he died seised, was sold by his administrator under an order of the Orphans'

Court for the payment of debts, and the residue of the proceeds of sale, after satisfying certain judgments in favor of the purchaser that were first liens, came into the administrator's hands, together with the proceeds of some personal property, for distribution.

On the hearing before the auditor appointed to distribute the funds, the appellant claimed that the proceeds of the sale of the real estate in the hands of the accountant should be applied in satisfaction of the unpaid taxes, or to the judgment taken as collateral security therefor, on the ground that by the Act of 5th of April 1844, extending the provisions of the Act of 3d of February 1824, relating to taxes on certain real estate in the city and county of Philadelphia to the county of Allegheny, these taxes were the first liens on the property and entitled to be first paid out of the proceeds of sale. It was admitted that, during the years in which the taxes were assessed and became payable, up to the date of the sale, there was sufficient personal property on the premises, if levied upon, to have satisfied the taxes. The auditor refused to apply the fund arising from the sale of the real estate to the payment of the taxes, and appropriated it in satisfaction of the judgment in favor of the appellee, which was prior in date to the judgment of the appellant as collateral security for the unpaid taxes.

The Orphans' Court confirmed the report of the auditor, and directed the funds to be paid out in accordance with the distribution made by him.

The case comes before us on an appeal from this decree, and the appellant contends that the court erred in dismissing his exceptions to the auditor's report, and in refusing to appropriate the proceeds of the sale of the real estate to the payment of the taxes. Were the taxes then a lien on the property at the time of the sale? It is undoubtedly true, as the appellant contends, that under the provisions of the Act of 3d of February 1824, as enlarged and extended to the county of Allegheny by the Act of 5th of April 1844, the taxes in controversy became a lien on the real estate sold by the administrator, from the date of their assessment, and that they had priority to all other liens or encumbrances charged thereon after the passage of the latter act. Nor was it necessary to the existence and preservation of the lien, as the auditor seems to have decided, that the taxes should be registered in accordance with the provisions of the Act. These provisions are merely directory, and a failure to comply with them does not affect the validity or duration of the lien. This was the construction given to the act by this court in Parker's Appeal, 8 W. & S. 449, and its correctness has never been questioned or doubted.

But if the taxes were a lien, for whose use or benefit was the lien given? Was it imposed for the benefit and security of the

[Wallace's Estate.]

collector, or for the advantage and security of the Commonwealth, city or county entitled to the taxes, and for whose use they were assessed? There can be no doubt that the lien was intended to be given to the party entitled to the taxes, and as security for their payment. It is equally clear that the act was not intended to confer any new power or authority on the collector to enable him to collect the taxes, nor to provide him with additional means to enforce their payment. The power with which he was already clothed was ample and sufficient for this purpose. The whole object and design of the act was to give to the parties entitled to the taxes an additional security for their payment, and therefore the lien was made to have priority and to be unlimited in its duration, and only to be discharged by payment.

But actual payment of the taxes to the parties for whose use they were assessed, or to their authorized agents, will and must necessarily have the effect of discharging the lien. When, therefore, the appellant settled his duplicates and paid over the taxes to the proper officers or agents of the parties entitled to receive them, the lien was discharged. But though discharged at law, the lien of the taxes, if justice required it, might be kept afoot in equity for the benefit of a paying surety: Cottrell's Appeal, 11 Harris 294.

As was said in Parker's Appeal, equity may well consider the tenant or stranger whose goods have been distrained on and appropriated to the payment of the tax, in the light of a surety, and as such entitled to be substituted to the rights of the party to whom the tax was coming. But the appellant cannot be regarded in the light of a surety. It was his duty to collect the taxes and pay them over without delay, and he had no authority to grant indulgence, or to extend the time of their payment. Public policy and the law require that an officer intrusted with the collection of taxes necessary to the support and proper administration of the government should discharge his duties with promptness and fidelity, and if he has been remiss or delinquent in the performance of his trust, it may well be doubted if he is entitled to subrogation under any circumstances. But however this may be, it is clear that he is not entitled to it to the prejudice of the rights of others.

Subrogation is founded on principles of equity and benevolence, and though it may be decreed where no contract or privity exists between the parties (Kyner v. Kyner, 6 Watts 221; Cottrell's Appeal, 11 Harris 294; Hoover v. Epler, 2 P. F. Smith 524), it is not to be allowed except in a clear case, and where it works no injustice to the rights of others: Lloyd et al. v. Galbraith et al., 8 Casey 103.

The principle which governs in all cases of substitution is one of equity merely, and it is to be carried out in the exercise of a

proper legal discretion, with a due regard to the rights of others, McGinnis's Appeal, 4 Harris 448; and it is not to be used to overthrow the equity of another, and thus work injustice: Zeigler *v.* Long, 2 Watts 206.

It has accordingly been held that a mere volunteer who, without any legal or moral obligation, pays the debt of another is not entitled to subrogation to the prejudice of the intervening rights of others; Hoover *v.* Epler, 2 P. F. Smith 524; nor is one who becomes surety of a defendant in a judgment for stay of execution, and afterwards pays the judgment, entitled to a cession of the judgment so as to have priority to subsequent judgment-creditors: Armstrong's Appeal, 5 W. & S. 352; Burns *v.* The Huntingdon Bank, 1 Penna. Rep. 395; Pott *v.* Nathans, 1 W. & S. 155.

Has the appellant any greater equity than that of a mere volunteer who pays the debt of another, or of one who becomes the surety of a judgment-debtor for stay of execution? If not, why should he have subrogation at the expense of a judgment-creditor who may have been injured by his culpable supineness, if not actual misconduct? It was his duty to have collected the taxes, and the means of enforcing payment were within his grasp. If it had not been for his gross delinquency he would not be seeking a preference over the appellee to which he is not entitled.

The Orphans' Court was clearly right in dismissing his exceptions, and in decreeing that the fund be paid out in accordance with the distribution reported by the auditor.

The appeal is dismissed, and the decree of the Orphans' Court is affirmed at the costs of the appellant.