JAY H. HART vs. THOMAS R. TIERNAN AND ANOTHER.

New Haven and Fairfield Cos., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The tax lien given by Gen. Statutes, § 3890, exists independently of any demand for payment of the tax or of any attempt to collect it. All that the statute has made necessary to its validity is a legal assessment and a proper and timely record of the lien.

By a private act passed in 1881 (9 Private Acts, 215), the tax collector of the town of Waterbury is made *ex-officio* collector of taxes for the city

of Waterbury and the Center School District. When a rate bill is delivered to him he is to be charged with the whole amount of the taxes due thereon, and is to collect and pay over the same, in default of a limitation fixed by the communities, in one year after the tax becomes due. At the end of this time he is required to pay over to the treasurer of each community whatever amount there remains due and has not been abated, and may at any time within six years thereafter maintain any proper action in his own name to recover the same. Held that he succeeds to the rights of the communities to the tax liens held by them and can foreclose them in his own name.

And it makes no difference that the tax lien had been extended by the communities for five years under the provisions of the statute.

And held that the collector could in one suit foreclose the three liens held severally by the town, city and school district, as he had become the equitable owner of them all.

[Argued October 28th—decided December 15th, 1890.]

Suit to foreclose three tax-liens, originally held severally by the Town, City and Centre School District of Waterbury; brought by the plaintiff in his own name, to the District Court of Waterbury, and heard by *Bradstreet, J.* The plaintiff was collector of taxes for the three communities named, and had, under a requirement of law, paid the taxes in question to their respective treasurers. The amounts of the taxes were respectively $1.32, $3.96 and $1.98. The liens were upon the same property, which was owned, at the time the lien attached, by Tiernan, the principal defendant, who was the original tax-debtor, the other defendant, the Meriden, Waterbury & Connecticut River Railroad Company, having an interest in the land acquired since the commencement of the lien. The railroad company appeared and filed a demurrer, assigning the following grounds of demurrer:—

"1. Said court has no jurisdiction at law for the sum of money on demand set forth in said complaint.

"2. The interest of this defendant in the premises described is only a right acquired by deed of land of March 24th, 1888, the whole of which was occupied by the defendant to lay and maintain a railroad track or tracks over and across said premises; and the defendant is not liable for any town, city or school taxes.

" 3. The plaintiff has no authority under law to maintain a suit for the foreclosure of any of the liens set forth in said complaint.

" 4. There is a misjoinder in said complaint because said liens are for taxes of different communities, to wit, town, city and school district."

The court sustained the demurrer and rendered judgment for the defendant. The plaintiff appealed.

*G. E. Terry* and *W. H. Pierce*, for the appellant.

*S. W. Kellogg*, for the appellee.

TORRANCE, J. Only two questions raised by the demurrer in this case demand consideration. First, whether the tax collector can maintain a suit in his own name to foreclose any one of these liens singly, and second, if so, whether he may in one suit foreclose the three liens.

Before however considering these questions, the objection to the complaint that no demand for the payment of the taxes is alleged, ought to be disposed of. As this objection was not made in the court below, where, if made, it might have been obviated by an amendment, we are not disposed to look upon it with any favor. It is only because the defendant seems to claim that without such allegation the complaint is fatally defective, that we give it any consideration.

The statute creates the lien, and it exists " from the first day of October, in the year previous to that in which said taxes became due, until one year after said taxes became due." Gen. Statutes, § 3890. It exists independently of any demand for payment of the tax or of any attempt to collect the tax, and even before it becomes due and payable. By the filing of a certificate under section 3896 of the General Statutes, within the first year after the tax becomes due, this lien is continued for five years thereafter. " This lien with its extension is a statutory creation ; it stands quite apart from the matter of selling the land upon a tax-warrant,

and is not encumbered by any proviso as to the possession of other property. It is a concession to the tax-payer. The state waives its right to immediate payment and a forced sale and accepts a first mortgage. * * * All that the statute has made necessary to its validity is a legal assessment and a proper and timely record of the lien." *Albany Brewing Co.* v. *Town of Meriden,* 48 Conn., 247. The form given under the authority of the Practice Act contains no allegation of demand. Had this complaint then been brought by the communities in whose favor the liens in question exist, no such allegation would be necessary; and if the plaintiff has the right to foreclose any of these liens, such allegation is just as unnecessary in a complaint brought by him.

Before considering the other questions in the case, it will be well to look at the powers and duties of the collector of taxes in the town of Waterbury, because they differ somewhat from those of tax collectors generally. His powers and duties are defined in a private act passed in 1881, and found in volume nine of the Private Acts, page 215. By that act he is made *ex-officio* collector of taxes for the city of Waterbury, and also of the Center School District of Waterbury. When a rate bill is delivered to him the whole amount of the taxes thereon is charged to him. He is to collect and pay over all the taxes on the rate bills, except such as shall be abated, within the time limited by the community laying the tax, or, in default of such limitation, within one year after the tax becomes due. At the end of such period he must pay over to the treasurer of such community whatever amount then remains due on the rate bills, whether he has collected the tax or not. If he fails to make such settlement and payment, it is made the duty of such treasurer, under penalty of a heavy forfeiture, to forthwith cause suit to be brought upon the collector's bond. If any taxes remain unpaid to the collector on the rate bills after his settlement, he " may at any time within six years after such settlement maintain any proper action in his own name and recover the same, with lawful interest thereon." His salary for the collection of all rate bills delivered to him is fixed at

two thousand dollars, " the same to be in lieu of all fees and charges whatsoever, except lawful fees for levying."

By section 3901 of the General Statutes all taxes properly assessed become debts due to the community in whose favor they are assessed, which may, in addition to the other remedies provided by law, be recovered by any proper complaint or proceeding at law in the name of such community.

In the case at bar the demurrer admits that, at the time this suit was brought, lawful taxes due to each of the communities mentioned, from the defendant Tiernan, which he had neglected to pay, had been paid by the plaintiff under the provisions of the private act referred to. It is conceded that, at the time of such payment, each of these communities had a valid lien upon the lands sought to be foreclosed. The question therefore is, whether the plaintiff, having been compelled to pay the tax, succeeds to the rights and remedies of the communities in and to the liens, including the right to foreclose them.

The defendant claims that, inasmuch as these liens have never been assigned to the collector, he cannot bring suit upon them in his own name. But if he succeeds to the rights of the community in and to the debt or claim secured by the lien, this can be no objection, for equity will consider the owner of the claim or debt as the owner of the security, and will lend its aid to enable him to realize upon the security. " When collateral security is given or property acquired for the better protection or payment of a debt, it shall be made effectual for that purpose, and that not only to the immediate party to the security, but to others who are entitled to the debt ; and to make them thus effectual a court of equity will lend its aid." *Homer* v. *New Haven Sav. Bank*, 7 Conn., 484. " The debt is the principal thing, and the mortgage is only an accessory or incident of the debt, and can have no separate independent existence. The doctrine is therefore universal, that any valid operative assignment of the debt is also an efficient assignment of the mortgage. * * * In the absence of a contrary statutory requirement,

such assignment need not even be in writing." 3 Pomeroy's Eq., § 1197.

After his settlement with the treasurers of these communities and the payment of Tiernan's taxes, the plaintiff certainly became the owner of whatever right the communities had to the taxes due from Tiernan, and the law gave him the right to collect them in his own name, at any time within six years. This would ordinarily carry with it in equity the right to all the securities, rights, interests and remedies of the creditor against the debtor. 3 Pomeroy's Eq., § 1197 ; *Homer* v. *New Haven Sav. Bank*, 7 Conn., 484.

Nor does it ordinarily make any difference with such a result that the claim or debt so paid is a tax, or that the state or some political subdivision thereof is a party to such transaction. " The state has a lien on the land for all taxes until they are paid. When paid by other than the owner of the land, the state must be considered as transferring its lien to such party." *Parks* v. *Watson*, 20 Fed. Rep., 765. See also to the same effect the cases of *Sharp* v. *Thompson*, 100 Ill., 447 ; *Willson* v. *Brown*, 82 Ind., 471; *Orem* v. *Wrightson*, 51 Md., 34 ; *Pettit* v. *Black*, 8 Neb., 169. The mere fact that the plaintiff was a collector of these taxes is no good reason for holding to a different rule in this case.

There is nothing in the record to show that the plaintiff has been guilty of any neglect of duty as tax collector, or that the rights of any one have been prejudiced by his acts. It is admitted that after diligent search he could find no goods or chattels of Tiernan's whereon to levy. It is true, it does not appear that he attempted to levy on the body of the delinquent tax-payer, or on the land in question, but in a complaint to foreclose a lien by the community none of these matters need be alleged, nor do we think they need be alleged in such a complaint by the collector, provided he can maintain such a complaint at all. " It is a presumption of law that the collector did his duty, and if he did not, it rests on the objector to prove the obliquity of his conduct." *Ives* v. *Lynn*, 7 Conn., 513. Without fault on his part the law compelled the plaintiff to pay the tax of the delinquent tax-

Hart *v.* Tiernan.

payer, whether collected or not.  By payment under the facts disclosed of record we hold that he became equitably entitled to the lien held by the community as security for the tax.

The objection of the defendant that these liens were never assigned to the plaintiff is therefore without foundation.   And so is the further objection that the complaint contains no allegation that the liens were assigned to the plaintiff.   All the facts are set forth, from which it clearly appears that he is in equity the assignee of the liens, and this is enough.

But the defendant says that the right to foreclose a tax-lien is a right given wholly by statute, and is given expressly to the community, and that therefore it cannot be exercised by the collector in his own name for his own benefit.   It is not perhaps entirely clear whether the claim of the defendant upon this point is, that the suit should have been brought in the name of the community for the benefit of the plaintiff, or that the plaintiff cannot avail himself of the lien at all, except by levy upon the land.   If it means the former, then the objection, if valid, would be merely technical, and another suit might obviate the difficulty.   If it means the latter, then of course the objection, if valid, is fatal to any suit of this kind by the collector.   As applied to this case we think both claims are untenable.

According to the first claim, the lien still exists, and exists for the benefit of the plaintiff, but he can appropriate that benefit only by means of a suit in the name of the communities.   In a court of equity a party has always been allowed to vindicate his equitable rights in a suit brought in his own name, and no good reason has been shown why the plaintiff may not be allowed the benefit of this rule in the case at bar.   The mere fact that he would have the right to do so in the names of the communities also, is not such a reason.   If then the plaintiff possesses any such equitable rights, he may bring a suit to vindicate them in his own name and without joining the community.

According to the second claim, the lien still exists, but

the plaintiff cannot avail himself of the right to foreclose it, because that right is given only to the community, and was not intended for the benefit of the plaintiff. It is true, the right to foreclose is given to the community, but there is neither by express words nor by necessary implication anything in the statute that debars one who by law succeeds to the ownership of the debt, and, as we hold, of the lien also, from availing himself of the right to foreclose which the community had. The defendant's claim on this point seems to pre-suppose that the main object of the statute in question was to determine who should exercise the right to foreclose a tax-lien. On the contrary, we think that the main object of the statute was to provide that tax-liens might be foreclosed, rather than to determine who should foreclose them. It provided an additional remedy against delinquent tax-payers; a remedy free from technicalities, speedy, effectual, and in which the rights of all concerned are amply protected. Ordinarily the lien will remain the property of the community, and will be foreclosed by it, and so the legislature named the community as one who would ordinarily and properly exercise this right; but this does not necessarily exclude those who by law succeed to all the rights of the community in the tax debt and the lien by which it was secured. To have this effect the language should be definite and certain beyond all question in cases like the one at bar. If we deny the right to foreclose it may work a great hardship to the collector, for he may have no other means of collecting the tax he has been compelled to pay.

The defendant says he may levy on the land; but can he now do so? The statute provides for a lien upon the land of a tax-payer which shall continue "from the first day of October in the year previous to that in which said taxes became due until one year after the taxes became due;" and then provides as follows :—" Said lien, while it continues as above, may be enforced by levy and sale before its expiration." Gen. Statutes, § 3890. It is further provided that the collector " may enforce by levy and sale any lien upon

real estate for taxes which exists, except such as are continued by certificate." Gen. Statutes, § 3889. In the case at bar the time for enforcing payment of the tax by levy and sale of the lien had passed at the time the plaintiff was compelled to pay the tax, and the lien had then been continued by certificate. It follows, therefore, that unless the plaintiff can bring this foreclosure he may be unable in any other way to collect a tax which the law, without fault on his part, compelled him to pay. And this too, notwithstanding the fact that a valid lien exists as security for the tax, the beneficial interest in which is owned by the plaintiff. A construction which leads to such a result we ought not to adopt unless the language of the statute imperatively requires it. It seems to us that when, as in this case, the law itself compels the collector to pay the tax of the delinquent tax-payer, whether collected or not, and gives him, after such payment, a right to the tax itself, it will also give him all the securities and remedies held by the community to whom the tax is paid against such delinquent.

The defendant cites the case of *Wallace's Estate*, 59 Penn. St., 401, as holding a contrary view to the one here adopted. But the facts and circumstances of the two cases differ materially. In the case cited the tax collector had, without authority of law, given time to a delinquent tax-payer for some six years, and had voluntarily paid the taxes himself. Up to the time of the death of the tax-payer the collector, but for his own neglect, might have collected the taxes out of the personal property. Some years after the death of the tax-payer the Orphans' Court ordered the real estate of the deceased tax-payer sold, and upon such sale the collector claimed a first lien upon the property for the taxes so paid by him. In the meantime the rights of third parties had intervened, which would have been injuriously affected by an allowance of the collector's claim. Under these circumstances the court says, in speaking of the lien of the state for taxes :—" Actual payment to those entitled necessarily discharges the lien. But though discharged at law, equity, if justice require it, will keep it afoot for the benefit of a

surety." But the court holds that this will not be done in favor of a collector who unlawfully and for his own purpose grants indulgences to tax-payers and volunteers to pay the taxes himself. The court says—" If he has been remiss or delinquent in the performance of his trust, it may well be doubted if he is entitled to subrogation in any circumstances ; " and holds that however this may be, yet under the circumstances, and as against those whose rights would be unjustly affected by allowing his claims, he was a mere volunteer whom the court would not aid. It will be seen therefore that this is not an authority against the position taken by us in the case at bar.

We hold then that the tax-liens may be foreclosed in the name and for the benefit of the plaintiff. If any dangers are likely to arise from the exercise of such a right, the remedy must be sought in the legislature.

This brings us to the last question, whether the plaintiff may foreclose these liens in one suit. If we are right in our conclusion, that the plaintiff is the owner of these liens, it would seem to follow that he has the right to foreclose them in one suit. They are claims held by him against the same parties and the same land. It is not a question of joinder of different parties plaintiff at all. If the plaintiff was the assignee of three notes secured by separate mortgages made by Tiernan upon this land to separate individuals, could there be any doubt about his right to foreclose all three against Tiernan in one suit ? Just as little doubt is there about his right to foreclose these three liens in one suit. We do not think that the plaintiff should be permitted to bring three suits, with three separate bills of costs, even if he wished to do so.

For these reasons we think there is error in the judgment of the court below, and it is reversed.

In this opinion the other judges concurred.