# Galliland, *et al. v.* Williams, *et al.*

*Bill for Cancellation of Mortgage and Subrogation.*

(Decided February 6, 1913.   61 South. 291.)

1. *Mortgages; Record; Presumption of Notice.*—In an action against the grantees of a decedent to set aside the transfer of property, and apply it to the payment of a claim arising out of a sale by decedent to the complainant of a mule which complainants were held to have converted at the suit of the mortgagee under a mortgage given by decedent, and recorded in another county, the presumption will be indulged that the record afforded complainants constructive notice of the mortgage, where the bill fails to aver facts showing the contrary, notwithstanding an averment of want of actual knowledge of

the mortgage; and also that the location or removal of the animal after the mortgage was recorded did not deprive the recordation of its effect as constructive notice.

2. *Same; Constructive Notice.*—Where the adjudication of a conversion by complainant of the property at the suit of the mortgagee is set forth in the bill seeking to set aside the transfer by a decedent of his property to the mortgagee and apply it to the payment of a claim arising out of the sale to complainant by decedent of the property in question, would indicate notice of the mortgage, though recorded in another county, constructive notice will be presumed, since a judgment for conversion could not have been rendered if the complainants had been legally without notice of the mortgage when they purchased the property.

3. *Equity; Subrogation; Maxims; Right to.*—One who seeks to have the doctrine of subrogation applied must come into court with clean hands; hence, where the purchasers of a mule did not pay the debt which the mule was mortgaged to secure, but were found guilty of conversion at the suit of the mortgagee, they cannot be subrogated to the claim of the mortgagee against the mortgagor, although without actual notice of the existence of the mortgage.

APPEAL from Clay County Court.

Heard before Hon. E. J. GARRISON.

Bill by C. H. Galliland and others, against J. F. Williams and others, to be subrogated to rights under a mortgage, and for cancellation. From a decree sustaining demurrers to the bill, complainants appeal. Affirmed.

RIDDLE, ELLIS, RIDDLE & PRUET, for appellant. In filing the bill in this cause complainants pursued the only remedy they had.—*Halfman v. Ellison,* 51 Ala. 543. The vendee is entitled in equity to subrogation. —4 Mayf. 868. The conveyance is void because made with intent to hinder or delay.—Sec. 4293, Code 1907, and authorities cited.

CORNELIUS & GAY, for appellee. The mortgage was properly recorded where the property was located and constituted constructive notice to all the world until the expiration of three months after the removal of the property to another county.—*Williams v. Vining,* 43

South. 744; sec. 999, Code 1896. The bill failing to show that complainants purchased the property after the expiration of three months from its removal, and also failing to show that the mortgage was not recorded in the county to which the property was removed, the presumption will be indulged that they had constructive notice of the mortgage, and having committed a wrong by the conversion of the property, were not entitled to subrogation.—*Starkes v. Bernheim,* 102 Ala. 466; 3 ;Ala. 352; 27 A. & E. Enc. of Law, 202. The bill was multifarious.—*Green, et al. v. Wright, et al.,* 49 South. 320; *Henry v. Tenn. L. S. Co.,* 50 South. 1029. Nolan elected to sue Gilliland when he could have sued both Galliland and Williams, and Galliland cannot now be subrogated to Nolan's right to bring trover against Williams, since it has been waived.—*Vandiver v. Pollak,* 107 Ala. 551; *Smith v. Gayle,* 58 Ala. 600.

McCLELLAN, J.—The decree appealed from sustained the demurrer to the appellants' bill against appellees. The bill, in substance, shows this: In the year 1905 appellants were constituted a partnership doing business at Goodwater, Ala. During the month of December, 1905, the firm bought of R. F. Williams a mule. The agreed price was $100. This was paid by a credit of $34 on an indebtedness due by Williams to the firm, and the remainder (which the bill alleged was $60) in cash. This mule was at the time of this purchase subject to an unpaid mortgage given by R. F. Williams, to S. J. Nolen. This mortgage was executed on March 6, 1905, and the debt it was given to secure matured October 2, 1905. It was recorded in the probate office of Clay county, Ala., on March 7, 1905. From the copy of the mortgage exhibited with and made a part of the bill it appears that R. F. Williams resided

in Clay county, Ala., at the time of its execution, and that the mule in question was held ("situated") in Clay county, Ala. It is averred that "said mortgage indebtedness was never paid to the said S. J. Nolen," that S. J. Nolen "recovered a judgment against" appellants in a justice's court in Coosa county, "for the conversion of said mule for the sum of $62 damages" and costs, which judgment appellants "were forced to pay," that that sum together with the necessary expense of an attorney's fee in defending the suit of Nolen was wholly lost to appellants. It is also averred that R. F. Williams died "during the years 1907 or 1908," that neither the firm nor its members knew, until the trover suit was tried, that said mortgage was due and unpaid or that it conveyed title to said mule, or that the mule so purchased was described in the mortgage. The right of appellants to be subrogated to Nolen's rights is asserted.

The bill then takes account of a deed executed August 16, 1907, by R. F. Williams to his sons, upon a recited consideration of $557, and charges that conveyed substantially all of the grantor's property; that he was then insolvent, the grantees being aware of that fact; that such conveyance was fraudulent and void as to appellants, who were and are entitled to be made whole for the sums so lost to them through the judgment in trover against them, a judgment that followed the fraud practiced upon them by R. F. Williams in the sale of the mule as stated; that the conveyance of August 16, 1907, was made for the purpose of hindering, delaying, or defrauding the grantor's creditors of whom appellants were, because of purchase of the mule, an intent common to all of the parties to that conveyance, and that there was in realty no adequate consideration paid by the grantees. The prayer seeks the cancellation of

the conveyance as against appellants and other credi-
tors, and the application of the property left by R. F.
Williams to the discharge of the demands of appel-
lants and other creditors. There is general prayer for
relief. It does not appear from the bill whether the
mule had been removed from Clay county more than
three months before its sale to appellants.

In the absence of averments of fact sufficient to avoid
the constructive notice the recordation of the mortgage
in Clay county operated to give (*Williams v. Vining,*
450 Ala. 482, 43 South. 744), it must be assumed
against the pleader on demurrer, and so notwithstand-
ing the affirmative averment of want of actual knowl-
edge on the part of the firm or its members of the ex-
istence of the mortgage covering this mule, that the
animal's location or removal after the record of the
mortgage in Clay county was not such as to deprive the
recordation of the mortgage of the effect to impute to
appellants constructive notice of the mortgage and of
its charge upon the mule.

If the matter were otherwise doubtful, the adjudi-
cation set forth in the bill of the appellants' guilt of
conversion would seem to invite and justify the conclu-
sion that appellants had some character of notice of the
mortgage sufficient to render them liable for the conver-
sion of the mule described therein, for it is not to be
supposed that judgment for the conversion could or
would have been rendered against appellants if they
had been legally without notice of the existence of the
mortgage when they bought the mule.

The basis of the rights appellants would assert must
be found, if at all, in the fact that they are entitled to
be subrogated to Nolen's rights against R. F. Williams
or his estate in consequence of the further fact that
they bought, because of Williams' fraud, a mule on
which Nolen held a mortgage, and for their adjudicated

conversion of the animal had to satisfy Nolen in damages.

It is generally accepted that one who seeks the benefit of the equitable doctrine of subrogation must come into court with clean hands; that a vendee cannot have relief under the doctrine if his status is the result of his own wrongful act, or of a wrongful act in which he participated, or of the wrongful act of one under whom he claims.—Sheldon on Subrogation (2d Ed.) § 44; *Boyer v. Bolender*, 129 Pa. 324, 18 Atl. 127, 15 Am. St. Rep. 723; *Johnson v. Moore*, 33 Kan. 90, 98, 99, 5 Pac. 406; *Rowley v. Townsley*, 53 Mich. 329, 339, 19 N. W. 20; *Railroad Co. v. Soutter*, 13 Wall. 517, 423, 524, 20 L. Ed. 543; *Farmers' Co. v. Carroll*, 5 Barb. (N. Y.) 613, 660; *Wilkinson v. Babbitt*, 4 Dill. 207, Fed. Cas. No. 17,668. It is said in this connection in the books that "he that hath committed iniquity shall not have equity"; that a "tort-feasor cannot make his own wrongful act the basis of an equity in his favor"; that the "doctrine of subrogation only applies to lawful and meritorious transactions." The case made by the bill falls within the class to whom equity will not accord subrogation. If appellants had paid the mortgage debt, thereby exonerating the chattel from the charge and satisfying R. F. Williams' debt, the doctrine might be invoked. The exaction made of them was in satisfaction of their own liability for their own wrong in converting Nolen's property. To allow them the aid of equity for their recompense would be to erect an equity, for their benefit, upon their wrong—a wrong that has been established in a tribunal and the judgment thereof satisfied.

The decree is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.