171 So. 259

**SCHUESSLER et al. v. SHELNUTT.**

5 Div. 236.

Supreme Court of Alabama.

Dec. 3, 1936.

Chas. E. Fuller, Jr., of LaFayette, for appellants.

D. W. Jackson, of LaFayette, for appellee.

THOMAS, Justice.

The bill sought subrogation for taxes paid on lands specifically described therein.

It is averred, "That in 1931 Chas. Schuessler & Sons was a partnership composed of Chas. Schuessler, Carl Schuessler, Rea Schuessler and Lewis Schuessler and the said Chas. Schuessler & Sons had formerly conducted a mercantile business in LaFayette, Alabama; that said partnership listed for taxation in the Tax Assessor's office of Chambers County, Alabama, on January 28, 1931, * * * the following described real estate (describing the property); that the said Chas. Schuessler & Sons failed to pay the taxes assessed to them, which amounted to $167.79, in Chambers County, Alabama, for the year 1931, which were due on October 1, 1931, and became delinquent after January 1, 1932, but the Federal Land Bank of New Orleans, Louisiana, made a payment of $35.88 on June 16, 1932, on the Chas. Schuessler

& Sons taxes to cover the taxes on the following, described lands on which it had a mortgage (describing the portion on which taxes were paid), which left a balance of $145.31, which included interest, fees, and cost of the sale that was made on June 25, 1932; that after March 1, 1932, the complainant, as Tax Collector, reported to the Probate Court of Chambers County, Alabama, that Chas. Schuessler & Sons' taxes were delinquent, and that he was unable to collect same without a sale of some real estate, by filling in some blank places on a docket book which had been used by the Tax Collectors of Chambers County, Alabama, for forty years in reporting delinquent taxes to the Probate Court. The Probate Court of Chambers County, Alabama, issued a decree signed by W. C. Batson, Judge of Probate, ordering the complainant as Tax Collector of Chambers County, Alabama, to sell the following described real estate for said delinquent taxes (describing the property to be sold), which was a part of the real estate composing the assessment for taxes in the Tax Assessor's office in Chambers County, Alabama, for the year of 1931 of the said Chas. Schuessler & Sons. The said sale was ordered to be held on May 23, 1932, but was continued over to June 25th, 1932, at which time the complainant complied with said decree from the said Probate Court by selling the lands ordered to be sold, * * * to the Bank of La-Fayette for $145.31; that O. L. Shelnutt, as Tax Collector of Chambers County, * * * made his final report of the 1931 taxes to the State Auditor on July 11, 1932, in which he turned over to the State Treasurer the money paid to him by the Bank of LaFayette as purchaser of the lands sold for the delinquent taxes of Chas. Schuessler & Sons."

It is then averred that on April 22, 1933, the Federal Land Bank of New Orleans filed suit in that court against the Bank of LaFayette, showing "that it held title by mortgage to 108⅙ acres of the land * * *, and that said mortgage had been foreclosed, at which foreclosure sale the said Federal Land Bank became the purchaser of the property which was sold by O. L. Shelnutt as Tax Collector of Chambers County * * * to the Bank of LaFayette for the delinquent taxes of Chas. Schuessler & Sons," and praying "that the said sale be set aside because it held title as stated and that the docket book containing the report of delinquent taxes to the Probate Court by the Tax Collector did not conform to the requirements of the Revenue Laws of the State of Alabama, and that the certificate of sale issued by O. L. Shelnutt as Tax Collector * * * to the said Bank of LaFayette, pursuant to said sale, was a cloud on the title to said real estate owned by the said Federal Land Bank"; and on May 10, 1934, a final decree was rendered, stating and decreeing "that the Federal Land Bank of New Orleans * * * was the owner and held title to 108⅙ acres of the land sold by the complainant * * * for delinquent taxes of Chas. Schuessler & Sons for 1931, by reason of a mortgage which it had foreclosed and the said Federal Land Bank was the purchaser and that the certificate of purchase issued by the said Tax Collector was not a cloud on the title and the sale was declared null and void because of said title, and further: 'The Tax Collector for Chambers County, Alabama, failed to comply with the law made and provided in this State for the sale of lands for taxes in that said official had no proper docket book for the purpose of making the entries therein, as required by law, and that the said Tax Collector failed to make a proper and legal report to the Probate Court of Chambers County, Alabama, all as required by the Revenue Laws of the State of Alabama, in that said purported report of the Tax Collector in the instant case utterly fails to show a description of the property.'"

It is averred that, by reason of the foregoing decree, the complainant, as tax collector of Chambers county, was duly required to refund the amount of $210.80, and that complainant, as such official, was subrogated to all rights and remedies formerly held by the state and county against the other lands embraced in the assessment return, under and by virtue of the provisions of the statute, section 3097, Code 1923.

It is prayed that plaintiff be granted the right of sale and a decree to sell all of the other lands so assessed and specifically described to enforce the payment of the said taxes to the plaintiff in order that he may be fully repaid with interest and cost; that is, "for the taxes he has been forced to pay that should have been paid by the said Chas. Schuessler & Sons; and if complainant has mistaken the relief to which he is entitled, then your complainant prays that he may have such other, further and proper relief in the premises

to which he has shown himself entitled, and which may seem meet and proper."

▇ The bill shows no stale demand or laches which would prevent recovery, if complainant is entitled thereto. There is no change in the relative positions of the parties or the property now sought to be impressed and sold; no unreasonable delay or long acquiescence that is unexplained, or such as to render the enforcement of the claim within the rule inequitable. First National Bank v. Nelson, 106 Ala. 535, 18 So. 154; Wooddy v. Matthews, 194 Ala. 390, 69 So. 607; Crowder v. Crowder, 217 Ala. 230, 115 So. 256; Salvo v. Coursey et al., 220 Ala. 300, 124 So. 874; Galliher v. Cadwell, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738.

▇ The general rule as to subrogation is based upon principles of natural reason, justice, and equity, with reference to a lawful claim, lien, or right. It is substitution, under recognized circumstances, of a new for an old creditor or lienholder, or permitting a transfer of a person or thing in the place of another, with the rights and obligations in the premises of the person or thing for whom transferred. "The doctrine of subrogation, being the creature of courts of equity, is so administered as to secure essential justice, without regard to form, and is independent of any contractual relation between the parties to be affected by it." McNeil v. Miller et al., 29 W.Va. 480, 483, 2 S.E. 335, 337. See our early cases of Foster v. Trustees of The Athenaeum, 3 Ala. 302; Lyon v. Bolling et al., 9 Ala. 463, 44 Am.Dec. 444; Houston, Ex'r, etc., v. Branch Bank at Huntsville, 25 Ala. 250, and Craythorne v. Swinburne, 14 Vesey, Jr. 160. Later decisions are collected in United States Fidelity & Guaranty Co. et al. v. First Nat. Bank of Lincoln, 224 Ala. 375, 140 So. 755; Montgomery, Superintendent of Banks, v. Wadsworth, 226 Ala. 667, 148 So. 419; Montgomery, Superintendent of Banks, et al. v. Ward, 227 Ala. 641, 151 So. 583.

▇ It should be further observed that subrogation is a mode of relief adopted by equitable principles to compel payment of a debt or discharge of a lien by one who in justice and good conscience should have paid or discharged the debt; and that the maxim, "He who comes into equity, must come with clean hands," applies to such procedure. United States Fidelity & Guaranty Co. v. R. S. Armstrong & Bro. (Southern. Bank & Trust Co., Intervener), 225 Ala. 276, 142 So. 576; Foster v. Winchester, 92 Ala. 497, 9 So. 83.

▇ It would result from this rule that if the party invoking the rule is not a volunteer, and both parties are merely negligent in the matter, there being no violation of law, contract, or superior equity, and no injury done to defendant, then application of justice and good conscience to the particular circumstances justifies the burden falling on him whose negligence or default primarily caused or induced the situation.

In Panhandle Lumber Co. v. Rancour, 24 Idaho, 603, 611, 135 P. 558, Chief Justice Ailshie observed: "The rule that 'courts of equity will not relieve parties from the consequences of their own folly, or assist them when their condition is attributable to their failure to exercise ordinary care for their protection,' will be administered by courts, in the light of the facts and circumstances of each particular case, with such discretion and flexibility as will accomplish substantial justice in the case then before the court." To like effect is Taylor v. Godfrey et al., 62 W. Va. 677, 59 S.E. 631.

In dealing with the doctrine of subrogation in Duke et al. v. Kilpatrick et al., 231 Ala. 51, 52, 163 So. 640, 641, Mr. Justice Gardner observes: "This remedy is not a matter of strict right, but of equitable origin, depending in its application upon the facts of each particular case. * * * And to justify its application, it must appear the enforcement of the doctrine will not only best serve the substantial purposes of justice, but also the true intention of the parties." That is, he who seeks relief will not be permitted to have advantage of his own wrongdoing. 60 C. J. page 708, § 21.

In Foster v. Winchester, 92 Ala. 497, 501, 9 So. 83, 84, it was said:

"The defendants Rhea and Leister, as a further defense, invoke the equitable principle 'that he who comes into a court of equity must come with clean hands,' and insist, if the facts stated in the plea be proven, the complainant has been guilty of such iniquity [we interpolate to be fraud by perjury and misrepresentation] as to deprive him of any standing in a court of equity. The principle invoked does not and never was intended to apply to all the transactions of the party seeking the

aid of a court of equity. The principle has its limitations, and must be confined to misconduct in regard to the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the parties and arising out of the transaction. 1 Pom. Eq. Jur. § 399."

In Adams v. Young, 200 Mass. 588, 592, 86 N.E. 942, it was declared that, "The merely constructive fraud of a purchaser will not prevent him from being protected in this manner, if he has not himself actively participated in the fraud." Held, that " * * * although a statute declares that the sale in bulk of a stock of merchandise, otherwise than in the regular course of trade, shall be fraudulent as against the seller's creditors, unless the seller and buyer make an inventory, etc., the good faith of the parties is not to be disregarded, and the buyer is not to be deprived of the right of subrogation to the securities held by creditors whose claims he has paid." 60 C.J. p. 709, § 21, note 53.

In Miller v. Stark, Adm'r et al., 61 Ohio St. 413, 56 N.E. 11, the holding was that negligence which does not increase the burden of any lienholder does not have the effect of preventing subrogation or destroying the right to subrogation; and mere mistake of fact held not to interfere with the application of that rule in Kone et al. v. Harper et al. (Tex.Civ.App.) 297 S.W. 294; Ward-Harrison Co. et al. v. Kone et al. (Tex.Com.App.) 1 S.W.(2d) 857.

A part of the text of 60 C.J. page 708 is based upon our decision in Galliland et al. v. Williams et al., 181 Ala. 173, 174, 61 So. 291, where the holding was: "One who seeks to have the doctrine of subrogation applied must come into court with clean hands; hence, where the purchasers of a mule did not pay the debt which the mule was mortgaged to secure, but were found guilty of conversion at the suit of the mortgagee, they cannot be subrogated to the claim of the mortgagee against the mortgagor, although without actual notice of the existence of the mortgage." To like effect is the case of United States Fidelity & Guaranty Co. v. R. S. Armstrong & Bro. (Southern Bank & Trust Co., Intervener), supra. These cases, however, are easily distinguishable from the instant case in that the complainants in the Galliland Case *did not pay the debt* which the mule was mortgaged to secure, *but were found guilty* of conversion of the

mule at the suit of the mortgagee; and in the United States Fidelity & Guaranty Company Case *there was no right of subrogation until the debt secured by the life insurance policies was paid.*

In Shaddix et al. v. National Surety Co., 221 Ala. 268, 128 So. 220, the bill was by the surety against the principal or his privies; held that ordinarily the right of subrogation depends upon full payment; that the right of lenders, of money discharging a portion of the tax collector's shortage, to subrogation to lien of state and county on the tax collector's land, was superior to the right of the collector's surety paying the balance. There is nothing in this holding that would deny appellee relief, but the ratable apportionment and subrogation that was made under the peculiar facts of that case in favor of the lenders of money *discharging a portion of the tax collector's shortage* was in accord with the justice of that and the instant case. Pickens County et al. v. Johnson, 227 Ala. 190, 149 So. 252.

In the well-considered case of Jefferson Standard Life Ins. Co. v. Brunson, 226 Ala. 16, 145 So. 156, dealing with priorities of mortgages, it was declared that while no general rule may be laid down as applicable to all cases, yet to justify application of the doctrine of subrogation, it must appear that the enforcement of the doctrine will not only (1) best serve the substantial purposes of justice, but also (2) the true intention of the parties, and (3) cannot be invoked to the injury of an innocent third person. N. O. Nelson Mfg. Co. v. County Board of Education et al., 228 Ala. 45, 152 So. 221; Strickland et al. v. Carroll, 228 Ala. 498, 154 So. 109; A. M. Robinson Co. v. Anniston Land Co., 217 Ala. 648, 117 So. 29; Cobbs v. Norville et al., 227 Ala. 621, 151 So. 576.

The decision in Montgomery, Superintendent of Banks, v. Wadsworth, 226 Ala. 667, 148 So. 419, opinion by the writer, must be referred to in the light of its material facts. It was there held that subrogation does not depend upon contract, but has its foundation in natural justice, when *the debt or superior lien has been* fully paid and claim against the debtor or superior lienholder has not been waived; that where the tax collector illegally deposited public funds in a nondepository bank, but took sureties for payment, the primary duty to pay was on the bank and its sureties, and liability of the tax col-

lector was secondary; and equity will not lend its aid to a litigant who has been guilty of reprehensible or illegal conduct directly connected with the subject-matter of litigation and its immediate circumstances entering into transactions before court. Moreover, in this case the interest of third persons, depositors of the bank, would have been disastrously affected, if the prerogative right had been recognized and allowed to prevail in favor of such official so illegally depositing such public funds in violation of law. Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769; National Surety Co. v. State et al., 219 Ala. 609, 123 So. 202, embezzlement under section 3973, Code.

In Montgomery, Superintendent of Banks, et al. v. Ward, 227 Ala. 641, 644, 151 So. 583, 584, the bill was against the Farmers' & Merchants' Bank of Samson, seeking subrogation of claims and liens of state and county against the properties of the bank, on account of tax moneys collected for the state and county being deposited by the tax collector when the bank was not a designated depository for such moneys. Held: "Equity will not lend its aid to one in his effort to extricate himself from the hurtful consequences of an act, deliberately committed, in violation of law, and in disregard of a duty solemnly enjoined by statute." Mr. Justice Knight continues his opinion, quoting from the case of Galliland et al. v. Williams et al., 181 Ala. 173, 178, 61 So. 291, and making the observation that "the deposit, under the averments of the bill, by the complainant of the funds of the state and county of Geneva, was wholly unauthorized and constituted a conversion of such funds," citing Montgomery, Superintendent of Banks v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769. He further concludes: "The action involved a wrong committed against the state and county, not only by the officers of the bank, but by the complainant, himself. For, if it was a violation of the law to receive the deposit, it was likewise equally a violation of the law for the complainant to make the deposit. The officers of the bank and the complainant stand in pari delicto. In these circumstances, a court of equity will not lend its aid to the complainant in his effort to extricate himself from the consequences of a wrongful act, in which he confessedly participated. The door of a court of equity

must, under the plainest principles, remain closed to him."

These cases are very different from the case at bar, where there was no positive, willful wrong, merely a mistake of fact on the part of the official in selecting a part of the taxpayers' land and undertaking its sale, as was done. The law did not impose upon the official the necessity of an abstract of title before he proceeded, relying, as he did, upon the return for taxes made to the assessor. The complainant, as such official, was compelled by statute to refund the amount of the taxes in question. Section 3097, Michie's Code, Acts 1919, p. 282, § 277.

In Schuessler v. Dudley, 80 Ala. 547, 2 So. 526, 60 Am.Rep. 124, the sureties on the official bond of the defaulting tax collector paying the amount of the principal's default held entitled to be subrogated to the rights of the state and county with their attaching liens on the land. Brantley v. Kelly, 226 Ala. 47, 145 So. 649; Singleton et al. v. United States F. & G. Co., 195 Ala. 506, 70 So. 169; Dothan Grocery Co. v. Dowling et al., 204 Ala. 224, 85 So. 498; Shields et al. v. Hightower et al., 214 Ala. 608, 108 So. 525, 47 A.L. R. 506. Authorities from other jurisdictions are: Thomas v. Hammer, 13 Lea (Tenn.) 620; Hart v. Tiernan et al., 59 Conn. 521, 21 A. 1007; Cole v. Rice, 74 Conn. 680, 51 A. 1083; 25 R.C.L. 1322, 1323.

The equity of the complainant-collector would not include court costs resulting from his negligence and incurred in the other case.

It follows that the trial court was not in error in overruling the demurrers to the bill of complaint, and the decree is therefore affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, and KNIGHT, JJ., concur.

BROWN, Justice (dissenting).

The appellee, O. L. Shelnutt, as tax collector of Chambers county, on June 25, 1932, in pursuance of an order of the probate court of said county, sold 188½ acres of appellants' lands to satisfy the claim of the state and said county for taxes on 914 acres of land duly listed by the appellants and assessed by the tax assessor for the year 1931, less $35.88 paid by the Federal Land Bank of New Orleans, as

mortgagee of appellants, and the Bank of LaFayette became the purchaser thereof at and for the sum of $145.31. Shelnutt, on his final settlement as tax collector with the state and county, paid said sum so received, together with other moneys collected as taxes, to the proper authorities of the state and county.

On April 22, 1933, the Federal Land Bank, having foreclosed its mortgage, filed its bill in the circuit court in equity, against said Bank of LaFayette, asserting that it was the owner of 108⅓ acres of said lands so sold; that said sale was void because "the Tax Collector for Chambers County, Alabama [the complainant in this case], failed to comply with the law made and provided in this State for the sale of lands for taxes in that said official had no proper docket book for the purpose of making the entries therein, as required by law, and that the said Tax Collector failed to make a proper and legal report to the Probate Court of Chambers County, Alabama, all as required by the Revenue Laws of the State of Alabama, in that said purported report of the Tax Collector in the instant case utterly fails to show a description of the property," and praying that the sale be declared void and the certificate thereof be canceled as a cloud on the title of said complainant, Federal Land Bank of New Orleans.

On May 10, 1934, a decree was entered in the equity suit, quieting the title of the complainant therein to said 108⅓ acres and declaring said tax sale void.

In the meantime the Bank of LaFayette went into liquidation and Ratchford, the liquidating agent, demanded of Shelnutt that he refund to the said Bank of La Fayette said "$145.31 with interest, which it had paid as the purchase price at the said void sale, and also $23.11 with interest, as costs assessed against it" (in said suit between it and said Federal Land Bank of New Orleans) "in which the said sale was declared void, to total $210.80," and after repeated demands and the refusal of the taxpayers to do so, Shelnutt, the appellee, refunded said sum of money so demanded to said liquidating agent. After said sale was declared void, the Federal Land Bank of New Orleans paid a balance of $16.78, due on the taxes for 1931, on lands embraced in its mortgage.

Thereafter, on May 14, 1936, Shelnutt filed this bill, alleging the foregoing facts and seeking to be subrogated to the alleged lien of the state and county for taxes for the year 1931, as against 585.4 acres of land, and two lots and a barn in the town of LaFayette. Included in said acreage are only 80 acres of the land originally sold.

The averments of the bill clearly show that the lands sold under the decree of the probate court were subject to the tax lien and liable for the taxes. This fact takes the case out of the influence of section 3097 of the Code 1923, which provides, in short, that when lands, not liable to sale for the payment of taxes, are sold therefor, the purchaser "may recover from the officer by whose fault or neglect the assessment or sale was made, and the sureties on his official bond, the amount of the purchase money paid him therefor, with interest thereon from the day of sale, together with all costs which are adjudged against him [the purchaser] in any suit concerning said land involving such tax title."

The averments of the bill negative the fact that the collector failed to collect the taxes and same were "charged against him on settlement with the State and County," rendering inapt and inapplicable section 377 of the Revenue Code of 1929 (section 400 of the Revenue Code of 1935) and the decision of this court in Brantley v. Kelly, 226 Ala. 47, 145 So. 649.

On the facts averred in the bill, section 3096 of the Code 1923 constitutes the purchaser of land at tax sale, if the same is "ineffectual to pass the title to the purchaser," an assignee of the "rights and liens of the state and county in and to *the lands sold,* both as to the taxes paid by said sale and as to taxes subsequently paid by the purchaser." (Italics supplied.) This section of the Code does not confer any right on the negligent and defaulting tax official, or provide any method or procedure by which such negligent, defaulting official may be subrogated to such liens.

Section 3098 of the Code 1923, provides that: "In case of the sale of any real estate, either for the collection of the taxes thereon, or for the collection of other taxes due by the owner thereof, said real estate shall be described in all the proceedings incident to the condemnation and sale thereof, and in the certificate and deed issued to the purchaser, at said sale, in the manner described in the assessment thereof, and in case of failure of the tax collector to so describe said property in any part of said proceedings, certificate, or

deed, by reason of which said deed may be held insufficient to convey the property intended to be referred to, the said tax collector and the sureties on his official bond shall be liable to the purchaser at said tax sale, for all amounts paid by him for such land, together with cost of suit for same. Should, however, the property be insufficiently described in the assessment thereof, the said tax assessor and the sureties on his official bond shall likewise be responsible to the purchaser, or in case the said liability has been enforced against said tax collector, then the said assessor and the sureties on his official bond shall be liable to the tax collector, or his sureties, for whatever sum he shall have been compelled to pay to said purchaser on account of said defect, together with cost adjudged against him in suit for such lands." This statute, for the specific default of failing to cause the lands to be described in all proceedings for the sale of lands for taxes, penalizes the tax officials and makes them and their sureties liable to the purchaser "for all amounts paid by him for such land, together with cost of suit for same." This section does not confer on the negligent and defaulting tax official any right or remedy to be reimbursed for money paid out in discharge of the liability imposed upon him.

It is well-settled that the doctrine caveat emptor applies to tax sales, and, in the absence of statute, persons seeking to acquire rights thereunder do so at their own risk—this is the substance of that doctrine. Fields v. Altman et al., 193 Ala. 160, 69 So. 543, Ann.Cas.1918B, 189; 61 C.J. page 1463, § 2071.

It is also familiar law that the one who seeks affirmative relief, either at law or in equity, cannot rest his right of action or right to relief solely upon his own wrong or negligence. Galliland et al. v. Williams et al., 181 Ala. 173, 61 So. 291; 60 C.J. page 708, § 21. If the party moving " 'must trace his right' through a violation by him of positive law, the courts will not lend their aid to reimburse the loss." General Electric Company v. Town of Fort Deposit, 174 Ala. 179, 184, 56 So. 802, 804; Allen v. Intendant & Councilmen of La Fayette, 89 Ala. 641, 8 So. 30, 9 L.R.A. 497; Bluthenthal & Bickert v. Town of Headland, 132 Ala. 249, 31 So. 87, 90 Am.St.Rep. 904.

This doctrine is applied generally to one claiming a right of subrogation in equity, which is never granted as a reward for the complainant's own fault or negligence. Fort Dodge Building & Loan Association v. Scott, 86 Iowa, 431, 434, 53 N.W. 283; German Savings & Loan Soc. v. Tull et al., 136 F. 1, 69 C.C.A. 1; 60 C.J. page 708, § 21; Montgomery, Superintendent of Banks et al., v. Ward, 227 Ala. 641, 151 So. 583; In re Wallace's Estate, 59 Pa. 401, 405; Hinchman v. Morris, 29 W.Va. 673, 689, 2 S.E. 863; Ætna Life Insurance Company v. Middleport, 124 U.S. 534, 547, 8 S.Ct. 625, 31 L.Ed. 537; Mercantile Trust Co. v. Hart (C.C.A.) 76 F. 673, 677, 35 L.R.A. 352; 25 R.C.L. § 49, page 1367.

In Mercantile Trust Co. v. Hart, supra, the court observed that: "Inasmuch as a public tax is a debt of such a character that it cannot be assigned or farmed out by the state or municipality to whom it is due (McInerny v. Reed, 23 Iowa, 410, 415), a case must be very exceptional and peculiar when the right arises to be subrogated to the lien of the state or a municipality. It would certainly be *contrary to sound public policy* to concede that a collector may accept payment of taxes in a mode not authorized by law, and thereafter, when confronted with a possible loss, be allowed the right of subrogation." (Italics supplied.) 76 F. 673, 35 L.R.A. 355.

The payment made by the appellee to the Bank of LaFayette was not made in satisfaction of taxes due by the appellants, property owners and taxpayers, but in satisfaction of appellee's liability for negligence in failing to comply with the provisions of section 3098 of the Code 1923. The appellants' liability for the taxes had already been fully satisfied with money paid to appellee by the Federal Land Bank of New Orleans and the Bank of La Fayette, and the law gave the Bank of LaFayette two remedies for its loss: First, to pursue its lien against the *property sold* at the void tax sale, and, second, a right of action against the tax collector for his negligence in failing to comply with the requirements of the law in respect to such sale, in consequence of which said sale is void.

The Legislature in said section 3098 of the Code made express provision for reimbursement of the tax collector when the sale was ineffectual in consequence of the negligence of the assessor, by imposing the liability on the assessor and giving the tax collector a right to sue the assessor and his bondsmen; but it makes no provision to

compensate the collector for his own negligence. The purpose of the statute in penalizing the tax officials for negligence proximately resulting in effective sales for taxes, was to stimulate greater diligence on their part in making efficacious records of such sales, and no authority can be found for subrogating such negligent officials to the liens of the state and county as a reward for such negligence.

But for the statutes, Code, §§ 3096, 3098, the purchaser at a void sale would be remediless. In Fields v. Altman et al., 193 Ala. 160, 162, 163, 69 So. 543, 544, Ann. Cas.1918B, 189, this court approved the following:

" ' "After a careful research we have found no case in which a purchaser at a void tax sale has, without the aid of a statute, been permitted to recover even the taxes lawfully assessed upon the land and paid by his purchase. It would seem equitable that he should at least recover the taxes which the landowner ought to have paid, and which he failed to pay. Many states have, accordingly, passed statutes in regulation of this subject, and giving the relief indicated; and, so far as we have been able to discover, whenever this relief has been given or sanctioned by a court of last resort, it has been by virtue of statutory law." ' "

The statutes cited in this opinion were enacted after the decision of this court in Fields v. Altman et al., supra, and still no provision was made to compensate a defaulting tax official for his own negligence. The bill, in my judgment, is without equity and the demurrers thereto were erroneously overruled. I therefore respectfully dissent.

FOSTER, J., concurs in the foregoing dissent.