DARDEN'S Adm'r, et al. v. BURNS' Adm'r, and another.

1. The purchaser of personal property may file a bill in the nature of a bill of interpleader, against his vendor and a third person who claims a right to the same, or seeks to avoid the vendee's title, and pray the decree of the court upon the conflicting claims, that he may be secure in the payment of the purchase money.

2. Where a testator, after specially bequeathing slaves and other personal property to his daughters, declared his meaning to be, that they should "inherit the above bequests, and if no lawful heirs of their bodies, then to revert to the family or estate:" *Held*, that the limitation was wholly indefinite, reaching to the remotest descendants of the first takers, and being uncontrolled by any thing which preceded or followed it, the daughters took an absolute estate.

Writ of error to the Court of Chancery for the county of Benton.

In July, 1842, the plaintiffs in error, who are, Benjamin Mattison, adm'r of Lemuel G. Darden, dec'd, James H. Harris, Richard Sawyer, Jesse G. Cobb and John Goodin, filed their bill against James L. Simmons, adm'r of Wm. Burns, dec'd, and Mary McGraw. The case stated in the bill, so far as it is ne-

cessary to notice it, is substantially as follows, viz: on the ninth of December, 1790, Benjamin Averitt made his last will and testament, in which are the following bequests and explanatory clause: "I give to my daughter Isabella, one negro girl, named Jinney, also one young mare and two cows. Also, my daughter Mary, I give one negro girl named Hagar, one mare and two colts, also one cow. My meaning is, the heirs of my daughters above named, are to inherit the above bequests, and if no lawful heirs of their bodies then to revert to the family or estate." This will was admitted to probate shortly after its date, in the District of Richland, in the State of South Carolina.

The testator's daughter, Isabella, intermarried with Burns, the intestate of the defendant Price, and died without issue of her body, in the lifetime of her husband; shortly after, Burns died intestate in the county of Benton, and under an order of the orphans' court of that county, his administrator sold the woman Jinney, (who was bequeathed by the will of Benjamin Averitt, to his daughter) and her children and grand children. At that sale, the intestate of Mattison, and each of the other complainants, became the purchaser in his several right of one or more of the offspring of Jinney, and executed their writings obligatory for the amount of their respective purchases, payable to the administrator of Burns. It is further stated, that the defendant, Mary McGraw, is the only heir of Mrs Burns, and claims the slaves in question under the will of her father—she being also a daughter of Benjamin Averitt, dec'd, and his only surviving child. The obligations of the complainants have matured, and suits been commenced on them in the county court of Benton; and the money due from the complainants respectively, they propose to bring into court to be paid over to whoever shall be adjudged, upon final hearing, to be entitled to it. The bill prays that injunctions may be awarded to restrain the administrator of Burns from proceeding in his actions at law, and that the administrator and Mrs McGraw, may be required to interplead and test their right to the slaves purchased by the complainants, or the money due on their obligations; and for further relief.

To prevent the objection to the bill, of multifariousness, it is agreed by the defendants, that all the complainants may join in the prosecution of the suit. An injunction was awarded, but afterwards, and before the answers came in, the defendants moved

to dismiss the bill for want of equity: and the chancellor being of opinion that the case stated was not such as authorised the court to require the defendants to interplead, and that complainants might litigate the administrator's title to the slaves in the actions pending at law, dismissed the bill at their costs-

Wm. P. Chilton and Bowdon, for the plaintiffs in error. A bill of interpleader may be properly filed where the complainant claims no relief from either of the defendants, but only asks the court to determine which of two or more parties is entitled to money or property which he owes, or has in his hands. &c. [ Bedell v. Hoffman, 2 Paige's Rep. 199.] Such a bill may be filed, although the complainant has not been sued at law, or has been sued only by one of the parties; or though the claim of one of the parties is actionable at law, and the other in chancery. [Richards v. Salter, 6 Johns. Ch. Rep. 445]. It is a question of law of some difficuty, whether Mrs Burns took the absolute estate under her father's will, depending upon the laws of South Carolina, or rather upon what they were in 1790. This question the complainants, or their counsel, cannot determine without jeoparding their interest, and think they may require a court of chancery to decide for them. [Atkinson v. Monk, 1 Cow. Rep. 691; Nash v. Smith, 6 Conn. Rep. 421.]

W. B. Martin, for the defendant.

COLLIER, C. J.—It is needless to inquire whether the case made by the complainant, is proper for a bill of interpleader, technically so called, [Story's Eq. Plead. 237, 241,] as there are many cases where a bill in the nature of a bill of interpleader, will lie by a party in interest, to ascertain and establish his own rights, where there are other conflicting rights between third persons. Thus a purchaser may file a bill in the nature of a bill of interpleader against the vendor or his assignee, and any creditor who seeks to avoid the title of the assignee, and pray the direction of the court, as to whom the purchase money shall be paid. So if a mortgagor wishes to redeem the mortgaged estate, and there are conflicting claims between third persons as to their title to the purchase money, he may bring them before the court to ascertain their rights, and to have a decree for a redemption, so that he

may make a secure payment to the party entitled to the money. In these cases the plaintiff seeks relief for himself; but in a bill of interpleader, he only asks that he may be at liberty to pay the money, or deliver the property to whom it of right belongs,. and be thus protected against the claims of both.    In the latter case, the only decree to which the plaintiff is entitled, is, that he be permitted to bring the money, or property, into court, and have his costs; and that the defendants interplead and settle their conflicting claims—*Ibid.*

The material question to be considered, is, whether the complainants, in order to their own protection, require the relief which they have sought?    It is a settled rule of law, that the limitation of personal property, by words which would create an estate tail, if applied to lands, will have the effect to vest the absolute interest in the first taker; because such property cannot be entailed.— [Fearne on Rem. 463; 2 Roper on Legacies, 393, and cases cited by these authors.    See also, Moffat's ex'rs v. Strong, 10 Johns. Rep. 11; Patterson v. Ellis, 11 Wend. Rep. 259; Bell and wife v. Hogan, 1 Stewart's Rep. 536; McGraw v. Davenport and wife, 6 Porter's Rep. 319.]    Such being the rule, the question is, whether the will of Benjamin Averett did not vest in his daughter, Isabella, an absolute property in the slave Jinney.    This question may be easily answered by a reference to the adjudged cases, which are numerous and direct.    In Saunders v. Hyatt, [1 Hawks' Rep. 247,] the testator devised to his son a plantation, and lands adjoining, with a limitation as follows, "and if he dies without any lawfully begotten heir of his body, then to his brothers and sisters."    The court were of opinion that the word "heir," meant "issue," and would embrace remote lineal descendants of the son, who might come into being long after his death, and would create an estate tail.

The words "heirs of the body," and "dying without issue," will create an estate tail, unless they are restricted by some expression indicative of an intention that the first estate should cease on the first takers dying without issue at the time of his death.    [Ld. Raym. Rep. 1561; 1 East's Rep. 264; 7 T. Rep. 531; 11 East's Rep. 668; 2 Bos. & Pul. Rep, 485; 4 Har. and McH. Rep. 393; 1 Wash. Rep. 71; 1 Call's Rep. 187; 3 id. 297; 4 Hals. Rep. 10.]

In Keating and wife v. Reynolds, [1 Bay's Rep. 80,] the testator bequeathed to his two daughters, slaves and other personal

property, and provided, that if they "should die without having a lawful heir to their body, to live, then and in that case, the said slaves, &c. to be equally divided to the survivors." The court said, "in the present case it is true that the words "heir of the body," are mentioned; and if they stood alone, and unqualified by any other words explanatory of the testator's intention, they would create an estate tail; consequently, the limitation would be too remote. But the words "to live," immediately following the foregoing words "heirs of her body," show that his idea was, children living at her death; and the limitation over upon the contingency of her leaving no children, to the survivor, is a sufficient description of the person he meant to take, so as to bring this case within the rules of law, in support of the limitation."— [See also, 1 Johns. Rep. 451; 10 id. 11; 11 id. 348; 16 id. 382; 2 Serg't & R. Rep. 59; 1 Bay's Rep. 453.] So, in Guery v. Vernon, [1 Nott & McC. Rep. 69,] the will contained the following clause: "I give unto my daughter, Florida Guery, two negro girls, and their increase, but in case my said daughter, Florida Guery, should die without heirs of her body, then the said negro girls to return to my son." The court thought that the words "heirs of her body," were not words of purchase, and that the limitation was too remote to take effect in favor of the son. Where slaves were given to a daughter by a deed poll, "and at her death to the heirs of her body;" it was held, that as they were unrestricted by other terms used in connection with them, they must be construed as words of limitation, and not of purchase. [1 Bay's Rep. 453.]

In McGraw v. Davenport and wife, [6 Porter's Rep. 327,] this court said, all the cases agree, that the words "die without issue," when used in a will as a limitation over of personal property, unexplained or controlled by any other circumstance, or language in the will indicating a different intention, do import an indefinite failure of issue. Their effect, when unrestricted, is to vest the entire property in the first taker. These citations very clearly indicate what the rule of law is, upon the question before us. The testator bequeaths slaves and other personal property to two daughters, and declares his meaning to be, that they shall "inherit the above bequests, and if no lawful heirs of their bodies, then to revert to the family or estate." The generality of the terms in which the intention is expressed, is uncontrolled by any thing which precedes or follows the clause. It is not attempted

to limit the failure of heirs to the death of the daughters, or to any particularly defined period in the future—it is wholly indefinite, and the limitation reaches to the remotest descendants of the first takers. The cases cited all show, that such a limitation cannot be sustained; and none are more directly in point than the cases which have been decided by the highest courts of South Carolina. The consequence is, that Mrs. Burns took an absolute estate in Jinney and her offspring—that being in possession (as it may be inferred from the bill) the property passed to her husband, and of consequence, vested in his representatives for the purposes of administration.

It is not alleged that the laws of South Carolina, (in which State the will in question was made) are, or were variant from the common law which we here recognize as the rule of decision; and we must in the absence of such allegation, intend that they are similar to our own. [Mims v. The Central Bank of Georgia, 2 Ala. Rep. N. S. 294.]

We have only to add that the decree is affirmed, with costs.