(107 So. 53)

### PEOPLE'S PLANING MILL CO. v. FIRST NAT. BANK OF EVERGREEN.
(3 Div. 737.)

(Supreme Court of Alabama. Jan. 21, 1926.)

1. Contracts ⟨key⟩193—Defendant bank held to be trustee of proceeds of timber contract, with duty to pay plaintiff money advanced under the contract, though not obligated to do so by the contract.

Where purchaser gave vendor of timber a purchase-money mortgage, under contract contemplating that plaintiff company was to make advances to the purchaser and dress the timber, title to timber as cut to vest in defendant bank, a creditor of the purchaser, and proceeds of the timber to be distributed amongst all of the above parties by defendant as financial agent in proportions named, the defendant bank occupied a trust relation to the parties, and plaintiff had a right to look to it for reimbursement for money advanced, though bank was not obligated for advances under the contract.

2. Contracts ⟨key⟩337(1)—Under contract, giving purchase-money mortgagee priority claim in lumber sold, complaint failing to show price for which lumber sold held not to entitle plaintiff to recovery.

Under timber contract whereby defendant was to apply on purchase-money mortgage $4 of proceeds of every 1,000 feet of lumber sold, and $12 on advances and dressing charges of plaintiff, mortgagee was entitled to priority payment of $4 out of each 1,000 feet of lumber sold, so that plaintiff's complaint, in action to recover amount due, failing to disclose price for which lumber was sold or that proceeds were in excess of sum due mortgagee, fails to show right of recovery.

3. Contracts ⟨key⟩194—Under contract reimbursing plaintiff for advances and for dressing of timber, right to advances held not affected by timber being dressed by another.

Where defendant was under duty to distribute part of proceeds of lumber under a timber contract to plaintiff for money advanced under the contract, and for dressing lumber delivered to plaintiff, plaintiff's right to recover for advances was not affected by fact that lumber was dressed by another with defendant's consent.

4. Contracts ⟨key⟩335(1) — Averment of performance of terms of contract held not necessary, where defendant rendered such matters beyond plaintiff's control.

In action to recover money due for advances and for dressing of lumber, it was not necessary to aver performance of terms of contract, such as loading of lumber and furnishing invoices and bills of lading to defendant, where lumber was delivered to another for dressing, with defendant's knowledge and consent. rendering such matters beyond plaintiff's control.

5. Contracts ⟨key⟩335(2)—Receipt of proceeds of sale of timber held to show a waiver of requirement for furnishing bills of lading.

In action to recover advances and dressing charges under timber contract, where it was shown that plaintiff dressed the lumber, loaded it, furnished invoices to defendant, and that lumber was sold by defendant, failure of complaint to show that bills of lading were furnished defendant was not an available objection, since receipt of proceeds by defendant disclosed a waiver of such requirement.

Appeal from Circuit Court, Conecuh County; John D. Leigh, Judge.

Action by the People's Planing Mill Company against the First National Bank of Evergreen. Plaintiff takes a nonsuit, and appeals from adverse rulings on pleading. Affirmed.

The contract upon which the suit is based is as follows:

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"This agreement, made and entered into by and between R. C. Ellis, Mark Booker, People's Planing Mill Company, a corporation, executing this agreement by A. K. Williams, its general manager, who is authorized so to do, and First National Bank of Evergreen, a corporation, executing the same by R. F. Croom, its president, who is authorized so to do, witnesseth that:

"Whereas, the said R. C. Ellis has sold to the said Mark Booker certain timbered lands and the said Mark Booker has executed a purchase money mortgage conveying the said lands to R. C. Ellis, as security for the purchase price thereof; and

"Whereas, it is desired by the parties hereto that the timber on said lands be manufactured into lumber and sold under the terms of this agreement; and

"Whereas, the said Mark Booker is indebted to the First National Bank of Evergreen, and it is desired to secure the said First National Bank of Evergreen and to pay the said indebtedness out of the proceeds of the lumber cut from the said timbered lands; and

"Whereas, it is desired that the lumber to be manufactured from said timber be dressed by the People's Planing Mill Company.

"It is agreed by and between the parties hereto as follows:

"The said Mark Booker shall be permitted to immediately erect a sawmill on the said lands purchased from R. C. Ellis and immediately commence to cut the timber therefrom and to manufacture the same into lumber, which said lumber, when so manufactured, shall be delivered by the said Mark Booker to the People's Planing Mill Company, and the said People's Planing Mill Company shall proceed to dress the said lumber and load the same on cars for sale as provided under the terms of this instrument.

"It is further agreed that the title to all of the lumber manufactured from timber growing on the said lands purchased from the said R. C. Ellis shall vest as soon as cut in the First National Bank of Evergreen, and the said lumber shall be sold under the direction of the said First National Bank of Evergreen, and the bills of lading for said lumber as the same is shipped shall be delivered to the First National Bank of Evergreen, and all payments made for the said lumber shall be made to the said First National Bank of Evergreen; that the said People's Planing Mill Company shall keep an accurate record of all lumber delivered to it under the terms of this agreement and shall furnish to the said First National Bank of Evergreen along with the bills of lading for said lumber invoices or memoranda, showing the kind and grades of lumber loaded into each car, together with the amount thereof; that said People's Planing Mill Company shall be paid for so dressing the said lumber the regular price which it is at that time charging the public for dressing lumber of the same kinds, dimensions, and grades; that out of the sale price of said lumber the said First National Bank of Evergreen shall pay R. C. Ellis four ($4.00) dollars out of each one thousand feet sold, the same to be credited on the purchase money mortgage executed to the said R. C. Ellis by Mark Booker, and the said First National Bank of Evergreen shall pay to the People's Planing Mill Company twelve dollars ($12) out of the sale price of each one thousand feet so sold under the terms of this agreement, the said People's Planing Mill to retain out of the said twelve dollars so paid to it the charges for dressing the said lumber and a sufficient amount to repay it for any advances made to the said Mark Booker during the cutting and manufacturing of the said timber, the balance of the said twelve dollars per thousand feet to be paid over to the said Mark Booker, all the balance of the sale price of the said lumber as the same is sold under the terms of this agreement after the payment of the sixteen dollars ($16.00) per thousand feet as above provided, shall be retained by the said First National Bank of Evergreen and credited by it to the account of the said Mark Booker until all the indebtedness due by the said Mark Booker to the said First National Bank of Evergreen is paid in full.

"It is further agreed that should the said First National Bank of Evergreen deem it advisable to have the said lumber sold by or through other persons or corporations it shall have authority so to do and shall have authority out of the sale price of the said lumber to pay all reasonable commission and expenses necessary for making such sale, it being understood that only the net amount remaining after all expenses shall be credited on the indebtedness of the said Mark Booker.

"It is further agreed that should the said Mark Booker fail to proceed with the cutting and manufacturing of the said timber into lumber, or should he fail to deliver the said lumber as manufactured to the said People's Planing Mill Company, the said First National Bank of Evergreen shall be authorized to take charge of all of said lumber so manufactured and sell the same as it shall deem best and after paying the amount due the said R. C. Ellis as stumpage and the charges of the People's Planing Mill Company to apply all the balance received for such lumber to the account of the said Mark Booker.

"This agreement shall continue and remain in force until all the timber on said lands is manufactured and sold, or until the indebtedness due by the said Mark Booker to the First National Bank of Evergreen is paid in full.

"In witness whereof, the parties hereto have executed this contract in quadruplicate on this the 8th day of March, 1924."

E. S. Thigpen, of Andalusia, and Jones & Jones, of Evergreen, for appellant.

The case is properly before the court for review of the rulings of the trial court in sustaining demurrers to the special counts of the complaint. Epperson v. First National Bank, 209 Ala. 12, 95 So. 343. Counsel discuss the questions raised, but without citing other authorities.

Hamilton & Jones, of Evergreen, for appellee.

Neither count alleges that defendant took charge of and sold the lumber for an amount sufficient to pay stumpage and leave a balance to apply on the charges of the plaintiff. Where plaintiff sets up the common count, and sets out therein the contract, his pleading must show that the contract has been fully performed on his part, and that nothing re-

mains except the payment of money, or he must rely upon special counts for a breach. Stafford v. Sibley, 106 Ala. 189, 17 So. 324. Where plaintiff sets up a special contract, and avers a breach, he must allege compliance on his part, or readiness and willingness to comply, and that he was prevented by the breach. Long v. Addix, 184 Ala. 236, 63 So. 982; Barney Coal Co. v. Davis, 1 Ala. App. 595, 55 So. 1023.

GARDNER, J. This suit grows out of a written contract entered into between the plaintiff, the People's Planing Mill Company (hereinafter referred to as the mill company), the defendant, the First National Bank of Evergreen (hereinafter designated as the bank), and two individuals, R. C. Ellis and Mark Booker.

Counts 1 and 2 were withdrawn by the plaintiff. There were filed numerous other counts, some seeking recovery for money had and received under what are termed special counts setting up the contract, and the facts upon which plaintiff relies for recovery, and other counts for breach of the contract set out. Demurrers were sustained to all of these counts, and plaintiff took a nonsuit to review the rulings of the court thereon. Epperson v. First National Bk., 209 Ala. 12, 95 So. 343.

The primary purpose of the appeal is to obtain a construction of the contract, and a consideration of count 3 as amended, which seeks recovery for money had and received, will suffice for this purpose. Under the contract, set out in full in this count, it appears that Ellis sold to Booker certain timbered land, taking a mortgage thereon as security for the purchase price. Booker was also indebted to the bank. All parties were desirous that the timber be manufactured into lumber, and it was contemplated that such lumber be dressed by the plaintiff, mill company. It further appears from the contract that the parties contemplated advances to be made by the mill company to Booker as he proceeded with the cutting and manufacturing of the timber into lumber. The bank was selected as the financial agency of the parties, and, evidently to further facilitate the marketing of the lumber, it was agreed that the title to all the lumber manufactured from such timber should vest in the bank immediately upon its being cut, and that the bank should sell the lumber and collect the proceeds. It was contemplated that Booker would deliver the timber as cut to the mill company to be dressed, and that the mill company would load the dressed lumber on cars, furnishing to the bank, along with the bills of lading, invoices or memoranda, showing the kind and grades of lumber loaded onto each car and the amount thereof, and that out of the proceeds of the sale of said lumber the bank was to pay Ellis $4 out of each 1,000 feet sold, to be credited on Booker's purchase-money mortgage, and $12 out of each 1,000 feet sold to the mill company, out of which the mill company was to pay its charge for dressing the lumber and so much thereof as necessary to repay it the sums advanced Booker, and the balance to be retained by the bank as a credit on Booker's indebtedness.

The contract very clearly discloses the intention of the parties that out of the proceeds of the lumber the bank was to retain for Booker's indebtedness to it the sum remaining only after the payment of the $16 per 1,000 feet, as stated above. The parties had in mind, however, that Booker might fail to carry out his part of the agreement as to delivering the lumber to the mill company, and near the close of the contract is the following clause providing for such contingency:

"It is further agreed that should the said Mark Booker fail to proceed with the cutting and manufacturing of the said timber into lumber, or should he fail to deliver the said lumber as manufactured to the said People's Planing Mill Company, the said First National Bank of Evergreen shall be authorized to take charge of all of said lumber so manufactured and sell the same as it shall deem best and after paying the amount due the said R. C. Ellis on stumpage and the charges of the People's Planing Mill Company, to apply all the balance received for such lumber to the account of the said Mark Booker."

The count here considered shows that from timber Booker cut and manufactured into lumber 500,000 feet, but only a small portion thereof (80,000 feet) was delivered by him to the mill company to be dressed, which amount was dressed by the mill company, loaded on the car with the memoranda or invoices thereof furnished to the bank; that the remaining 420,000 feet Booker delivered to another party, to be dressed, without the consent of plaintiff, mill company, but with the knowledge and consent of defendant bank; that, after entering into the contract, and during the time Booker was cutting and manufacturing the timber, plaintiff, relying upon said contract, made advances to Booker, a large portion of which remains unpaid; that all the lumber referred to was sold by defendant or under its direction, and all proceeds thereof were received by defendant, but defendant refuses to pay the charges due plaintiff under the contract. It is also averred that plaintiff at all times has been ready, able, and willing to dress said lumber.

[1] It is insisted by defendant that, in fact, a recovery of advances to Booker is here sought, and that defendant under the contract was under no obligation therefor. True, defendant did not so obligate, but by the contract defendant became the financial agent of the parties, and occupied, in a sense, a trust relation to this plaintiff as well as the other parties. The funds in its hands were to be dispersed in accordance with the terms

of the contract. It was contemplated that advances should be made by plaintiff to Booker, and that these advances should be repaid to plaintiff out of the proceeds of said lumber as a part of the $12 out of the sale price of each 1,000 feet sold by the defendant. In the clause of the contract hereinabove set out a payment of the charges of plaintiff, mill company, is provided for. Should Booker fail to deliver the lumber to plaintiff, as provided in this clause, then there would be no charge for dressing the lumber, and charges therein provided to be paid plaintiff were the charges for advances as were contemplated by all parties were to be made Booker by plaintiff.

[2] But we construe the contract to the effect that plaintiff's right is subordinate to that of Ellis for stumpage. The payment to Ellis of $4 for each 1,000 feet of lumber sold was to be credited on the purchase price therefor. As security, Ellis held a mortgage, and there existed also the statutory lien. In the contract the payment of this stumpage to Ellis was given first consideration, and we are of the opinion all parties contemplated that Ellis was to be first paid out of the proceeds of the lumber; that is, had a priority of right as against plaintiff or the bank. We do not intend by what we have here said that Ellis was to be paid first for all stumpage, but that as to the $4 out of each 1,000 feet he had priority of right of payment. If it should so happen (by way of illustration) that the lumber sold for a sum not in excess of $4 per 1,000 feet, Ellis' right to payment would be superior, and there would be no funds for further distribution to plaintiff. The counts fail to disclose the price for which the lumber was sold, or that the proceeds were in excess of the sum due Ellis for stumpage, under the contract as here construed. Failing in this, the counts do not show a right of plaintiff to recover. There are assignments of demurrer taking this point, and these assignments justify the action of the trial court.

Without specific treatment of each count, we may add that this defect is inherent in the entire complaint, though some of the counts, as for breach of contract, may be also defective in failing to aver that the defendant sold the lumber and received the proceeds thereof, for defendant was authorized, but not obligated, to take charge of the lumber and sell the same, but, having assumed charge as so authorized, we are of the opinion defendant held the proceeds thereof for distribution in accordance with the terms of the contract. As we have previously stated,

however, this distribution contemplated that Ellis be first paid $4 out of each 1,000 feet, and the complaint, failing to disclose that the proceeds were in excess of such sum, is defective, and subject to the assignment of demurrer taking the point.

One or two other matters which received much attention in brief may be adverted to.

[3] The count charges that the lumber was delivered to another, to be dressed without plaintiff's consent, but with the knowledge and consent of defendant. Plaintiff had a right, as we construe this contract, to look to the funds in defendant's hands for reimbursement of the advances made to Booker, and that another dressed the lumber under the circumstances herein averred does not affect this right.

[4] It is objected that the plaintiff fails to aver it has performed all the terms of the contract, such as loading the lumber on the cars, invoices and bills of lading furnished defendant, citing Long v. Addix, 184 Ala. 236, 63 So. 982, to the effect that, where one relies upon a breach of a contract, he must show that he has fully complied therewith, or that he was ready, able, and willing to do so, but prevented by defendant's breach. But this argument is inapplicable to the averment of this count showing that the lumber was never delivered to plaintiff. The provisions for invoice, bills of lading, and memoranda presuppose a delivery of the lumber to plaintiff, and were to facilitate the sale and proper accounting thereof. The delivery of the lumber to another with defendant's knowledge and consent has rendered these matters beyond plaintiff's control. Long v. Addix, supra.

[5] As to the small portion of the lumber delivered to plaintiff, we do not think it objectionable that it fails to show plaintiff furnished defendant a bill of lading therefor. It does show that plaintiff dressed the lumber, loaded it on cars, and furnished defendant memoranda or invoice thereof, and that. the lumber was sold by defendant, and proceeds of the sale received by it. The bill of lading was only to facilitate the sale, which, being accomplished, and the proceeds in defendant's hands, sufficiently discloses a waiver of such requirement. Long v. Addix, supra.

It results that the demurrer to the complaint was properly sustained, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.