140 So. 347

**WILKES et al. v. TEAGUE et al.**

6 Div. 23, 23–A.

Supreme Court of Alabama.
March 10, 1932.

C. L. Odell and Huey, Welch & Stone, all of Bessemer, for appellant.

Thos. J. Wingfield, of Birmingham, for cross-appellants.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee Alverson.

GARDNER, J.

The objections to the original bill rest upon the assumption it is one of strict interpleader, requiring an assertion of perfect disinterestedness as an essential ingredient, and an attitude on the part of the complainant as a mere stakeholder, indifferent between the conflicting claimants. Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 177, 134 So. 800. But we do not so construe the bill. It discloses complainants as agents of all parties to the contract (Exhibit A), the title to the lumber cut to be in complainants for the purpose of a sale and disposition of the proceeds, the conflicting claims of the parties which call for a construction of the contract, and the necessity for an accounting.

Aside from a consideration of any question of equity on the ground of prevention of a multiplicity of suits (Roanoke Guano Co. v. Saunders, 173 Ala. 347, 56 So. 198, 35 L. R. A. [N. S.] 491; City of Albany v. Spragins, 214 Ala. 449, 108 So. 32; 21 Corpus Juris 76), which need not be determined, we are of the opinion that the trust relationship (People's Planing Mill Co. v. First Nat. Bank, 214 Ala. 215, 107 So. 53) existing between the complainants and the parties to the contract, and the necessity for an accounting and construction of the contract,

suffice to sustain the equity of the bill, which may be denominated as one in the nature of a bill of interpleader, wherein the matter of disinterestedness is not essential (4 Pom. Eq. Jur. § 1481; Wheeler v. Armstrong, 164 Ala. 442, 51 So. 268; Darden's Adm'r v. Burns' Adm'r, 6 Ala. 362; Finn v. Missouri State Life Ins. Co., 222 Ala. 413, 132 So. 632; Hall v. McKeller, 155 Ala. 508, 46 So. 460; Groves v. Sentell, 153 U. S. 465, 14 S. Ct. 898, 38 L. Ed. 785; 1 Corpus Juris 613, 614; 21 Corpus Juris 216).

We conclude error cannot be predicated in the ruling on demurrer to the bill.

Upon the merits of the cause, the question of prime importance relates to the matter of proper construction of the contract made an exhibit to the bill. Appellants, owners of the timber, insist that the price to be paid was a maximum of $14,000, and a minimum of $11,000, and, having been paid only $5,500, they were entitled to the minimum less the sum received.

We are in accord, however, with the chancellor as to the construction of this contract to the effect there was no minimum price fixed. The contract very clearly contains a guaranty of four million feet of timber on the land, and the maximum price was based upon such guaranty. The proviso as to no further payments when the sum of $11,000 had been reached was evidently inserted for the protection of the purchasers, and, if it had been intended as fixing a minimum price, it would have been quite easy to have so stated. That it was intended as a mere stopping point we think is demonstrated by the clause immediately following reference to the $11,000 as follows: "If at such time it shall not have been determined as to the quantity of the timber hereinabove guaranteed." As stated by the chancellor in his decree: "There is no prohibition in the contract against determining the quantity of timber before eleven thousand dollars was paid on the principal." The proof shows, practically without dispute, that the quantity of timber fell far short of the guaranteed amount, and there is evidence indicating that one of the owners (Davis) was aware of such shortage prior to the contract of sale, though that is not a matter of controlling importance here.

Our construction of the contract, therefore, brings us to the conclusion that the purchasers were properly credited in the decree with $3.75 per thousand on the deficit.

Appellants urge that the original bill should be dismissed upon the theory that complainants did not come into court with clean hands, rested largely upon the insistence that the complainants who were in effect trustees were interested in the matter and in the litigation. Complainants financed

the deal resulting in the purchase, and were interested from a business standpoint. But there was no fraud or wrongful conduct. The owner entered into the contract with the purchaser, Wigginton, and did not seek to bind these complainants in any manner, and afterwards accepted the written obligation of Alverson assuming Wigginton's contract. Indeed, the contract expressly provides against any liability of complainants other than that growing out of the agency feature. The facts, therefore, do not bring the case within the influence of the principle of Irby, Adm'r v. Kitchell, Adm'r, 42 Ala. 438, cited by appellants; nor run counter to the equitable maxim, "he who comes into equity must come with clean hands" (21 Corpus Juris 181), as there here appears no conduct which is fraudulent, illegal, or unconscionable, or, indeed, wrongful. All parties contracted at arms' length. There were no pre-existing fiduciary relations and no fraudulent representations. It was simply a business deal in which it may be conceded complainants had an indirect interest, but which did not prejudicially affect the owners of the timber and their contract.

The contract governs the rights of the parties, and, as here construed, the question of the deficit as to the quantity of the timber becomes of prime importance. The most important features of the contract relate to the price to be paid and the guaranty as to quantity upon which the maximum price was based. True, the purchaser was to furnish copies of invoices to the owners, which Wigginton did for a while and then discontinued, but there is nothing in the contract indicating a neglect in this regard would work a forfeiture of any substantial rights of the parties. Nor does it appear that the owners made any insistent demand upon Wigginton or upon the complainants therefor. The failure in this respect, therefore, becomes a matter of proof as to any substantial damage suffered thereby, and none is shown.

The decree found due to the owners $81.06 and cross-appellants argue that the owners were overpaid $20.65, and the decree should have been in their favor for such sum. But this contention is based upon the assumption that the testimony as to the amount of timber cut is entirely correct, and that the estimate as to the percentage of increase as testified to by the witness Propst is likewise to be so accepted. We do not think, however, the decree is to be weighed in so exact a scale, or that the testimony of one witness based upon estimates is to be necessarily accepted as so precisely accurate. Upon a due consideration of the evidence, we are not persuaded the amount of the decree is erroneous.

Considering the whole case, our conclusion is that the chancellor has reached a correct conclusion, and that the cause should be affirmed both upon the direct and the cross appeals. The decree will accordingly be here affirmed on both appeals, and the costs of the appeal taxed equally against appellants and cross-appellants.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.