178 So. 3
## LAVRETTA et al. v. FIRST NAT. BANK OF MOBILE.
### I Div. 976–978, 980, 981.

Supreme Court of Alabama.
Dec. 16, 1937.

Harry T. Smith & Caffey, of Mobile, for appellants.

Robert H. Smith, of Mobile, for appellee.

**THOMAS, Justice.**

The transcripts are abbreviated under authority of the statute. Code 1923, § 6110, and Stokes v. Stokes, 212 Ala. 190, 101 So. 885. The five cases are argued and submitted together by agreement. The cases will be so considered and decided.

The appeals and assignments of error are from decrees overruling demurrers to the bills as amended. It is conceded that the pleas present matter incorporated in the amended bills, and that the overruling of demurrers thereto presented the questions sought by a ruling on the pleas to the several bills. We, therefore, proceed to a consideration of the decrees overruling demurrers to the amended bills, seeking foreclosure of the several mortgages.

All of the material matters are stated in the several bills and are set out in full in the transcript No. 976.

The bills in the transcripts Nos. 977, 978, 980, and 981 make reference to certain matters contained in the transcript of case No. 976, under the statute and the rule of our decisions. Section 6110, Code 1923, and Stokes v. Stokes, supra.

A summary of the several cases is now to be made.

In case No. 976 the mortgage dated March 22, 1932, was for the purpose of paying interest then in default on the other four mortgages. This mortgage was subsequent to the agreement of December 17, 1931. The principal of this mortgage matured September 22, 1932, and has been in default as to principal, interest, and taxes since that date.

In case No. 977 the foreclosure of mortgage for $15,000 is involved. This mortgage was made to the bank as trustee of W. Marshall Turner and was dated March 3, 1931, payable March 3, 1933, with interest payable semiannually. This mortgage was in default for failure to pay taxes, on December 17, 1931, when the agreement in question was made. After postponements and discussions, this mortgage was foreclosed on October 15, 1934, and the property was purchased at sale by the bank as trustee for the estate of W. Marshall Turner. Possession was taken of a part of the property, but the home of Lavretta was not included in that sale.

Prior to the filing of the instant bill, the mortgagor through his solicitor insisted that the sale was void, and the bank filed this bill, thus admitting the invalidity of the sale, and prayed the court to set aside the sale and foreclosure, and to foreclose the mortgage in equity. This suit was filed January 29, 1936.

It is admitted by the solicitor for appellant that the validity of such sale was denied before the instant bill was filed, and that the contention of invalidity was bona fide.

We will indicate later whether or not this was a sufficient basis for filing the bill in equity to set aside the former sale under the power contained in the mortgage and sufficient to warrant proceedings in equity to foreclose because of the fact of bona fide doubt of the validity of the foreclosure sale, to which we have adverted. The mortgagee's insistence as to this is that the

sale of October 15, 1934, be held valid or else a decree setting aside such sale be entered, ordering a new foreclosure in equity. To this effort appellant invokes the rule of coming into court with unclean hands and as barring the further right to foreclose in equity.

In case No. 978 the foreclosure of mortgage made to the bank individually for $3,333.33 dated March 2, 1928, was involved. The bill showed that on June 6, 1932, Samuel S. Foshee, Jr., became the owner of the mortgage and debt secured thereby, and on that day conveyed the mortgage and debt to the bank in trust upon conditions set forth in the bill. It is averred that the trust is still in existence, and was in existence at the time the bill was filed. That mortgage was payable on October 17, 1928, and was in default for failure to pay principal and interest on December 17, 1931, when the agreement in question was made. After postponements and discussions, this mortgage was sought to be foreclosed under the power of sale on October 15, 1934, and the property purchased at such sale by the bank as trustee for Foshee. Under that sale the bank took possession of the property. The mortgagor's solicitors insisted that this sale was likewise void and the bank acquiesced therein and filed the instant bill to set aside the sale and foreclosure under the power therein, and prayed a foreclosure and sale in equity. This suit was filed January 29, 1936. And what has heretofore been said relative to the mortgage sought to be foreclosed under the power contained therein has application here. Appellant likewise insists that this case should not proceed further in a court of equity under the rule of unclean hands. The argument of appellants' counsel indicates that payment of these debts could not have been made by the mortgagor, and hence there is no basis for estoppel, in that Lavretta has not been injured, as he could not have redeemed the property within the period of two years' redemption from such sales, if said sales are held not to be valid. Of this a further consideration will be taken.

A summary of cases Nos. 980 and 981 is the same. Case No. 980 is for the foreclosure of a $16,000 mortgage due appellee bank dated December 15, 1930, the principal payable six months after date. In case No. 981 foreclosure is sought of the bank's mortgage made by appellant for $44,000, dated March 1, 1928, the principal payable $5,000 three years after date, March 1, 1931; $5,000 four years after date, March 1, 1932;

and $30,000 five years after date, March 1, 1933. Interest was payable semiannually. Both mortgages contain provisions for due payment of taxes and were in default on December 17, 1931, when the bank made its agreement with Lavretta looking to the postponement or foreclosure, and had been in default for several years before the bill was filed.

For the purpose of consideration of the demurrers, it is noted that exhibits to the several bills became a part thereof and will aid that pleading. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Wilson v. First Nat. Bank of Gadsden, 209 Ala. 70, 95 So. 340; Chancery Rule 16; Michie's Code, Chancery Rule 109; and Clements v. Clements, 200 Ala. 529, 76 So. 855. It is further declared that an exhibit made the basis of a cause of action or defense and contradicting the averments of the pleading to which it is made a part will control such pleading. 49 Corpus Juris, 619, § 883, and South v. First Nat. Bank of Fayette, 17 Ala.App. 569, 88 So. 219.

It may be further observed as to necessary parties, as affecting the trust mortgages of Foshee and Marshall Turner, that the intention of the parties originating the beneficial interest in the funds must appear clear in order to constitute the party in whom the legal title of the action is vested, and that the representative of the beneficiaries form an exception to the general rule that in equity the cestui que trust shall be parties to a suit by their trustee for recovery or foreclosure, and entitles the trustee to sue in equity without joining the beneficiary. This has long been the rule in this jurisdiction. Walker v. Miller & Co., 11 Ala. 1067, 1085; Mobile & C. P. R. Co. v. Talman and Ralstons, 15 Ala. 472; Silverstein et al. v. First Nat. Bank of Birmingham, 231 Ala. 565, 165 So. 827; Birmingham Trust & Savings Co. v. Ansley, 234 Ala. 37, 173 So. 378; 19 R.C.L. p. 272, § 43; 41 Corpus Juris, p. 882, § 1094; and 41 Corpus Juris, p. 445, § 328, Parties. It appears from this pleading that all necessary parties are before the court—it was not for the establishment of respective interests of beneficiaries. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

The rule or maxim, he who comes into equity must come with clean hands, is based on conscience and good faith. It follows that bad faith or unconscionable conduct that falls within the maxim must

rest upon a positive or willful wrong, must involve intention as opposed to an inadvertent act or a misapprehension of legal rights. Such is the effect of the decisions in this jurisdiction. Schuessler v. Shelnutt, 233 Ala. 188, 171 So. 259; Wilkes v. Teague, 224 Ala. 283, 286, 140 So. 347; Montgomery v. Wadsworth, 226 Ala. 667, 148 So. 419; Byrum Hardware Co. v. Jenkins Bldg. Supply Co., 226 Ala. 448, 147 So. 411; Anders v. Sandlin, 191 Ala. 158, 67 So. 684; Galliland v. Williams, 181 Ala. 173, 61 So. 291; Harton v. Little, 188 Ala. 640, 65 So. 951; 21 Corpus Juris, p. 181, § 163, and p. 187, § 173; 60 Corpus Juris, pp. 708–724; and 4 A.L.R. 48.

We recognize the distinction in the maxims discussed by Mr. Pomeroy, 1 Eq.Jur. § 397, and reproduced in the opinion of Harton v. Little, supra, and other authorities. When the whole correspondence is duly considered, we find no application of this rule to the conduct of the bank.

■ It is well recognized that a court of equity having acquired jurisdiction for one purpose will determine all rights presented as to all parties and give full relief, whether legal or equitable. Baggett Mercantile Co. v. Vickery, 213 Ala. 427, 105 So. 207; Wright v. Wright, 230 Ala. 35, 159 So. 220; First Nat. Bank of La Pine v. Bradley, 223 Ala. 22, 134 So. 621, and Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463.

■ It is further held that where the amount of the mortgage debt is uncertain, if a decree pro confesso is taken, evidence may be taken to prove the amount due, or a reference before the register may be had. Code 1923, § 6603; Brewer et al. v. Kaul Lumber Co., 193 Ala. 269, 69 So. 84. This rule has long prevailed—that same may be referred to the register or master—to ascertain the necessary fact. Mussina v. Bartlett, 8 Port. 277, Carradine v. O'Connor, 21 Ala. 573, and authorities cited in 21 Corpus Juris, p. 799, § 948, and p. 800.

■ In view of the fact that the several bills for foreclosure are being submitted and argued together, we should say that as to the two mortgages for the benefit of Turner & Foshee, Jr., and possession surrendered and acquired after attempted foreclosure under the power contained in the mortgage, it is not necessary to restore possession to mortgagor before foreclosure. Possession by mortgagee and foreclosure are not inconsistent remedies. The rights of a mortgagee after default are stated in Rountree et al. v. Satterfield, 211 Ala. 464, 467, 100 So. 751, 754, as follows:

"The remedy of the mortgagee or her assignee is threefold: (1) To bring her bill to foreclose the equity of redemption and sell the property for the satisfaction of the debt and have a deficiency decree against the mortgagor; (2) to maintain an appropriate action for the possession of the property conveyed by the mortgagee, and in a proper action possess herself of the rents and profits; or (3) to bring a suit for debt upon the bond. Irvin v. Irvin, 207 Ala. 493, 93 So. 517."

We advert to this phase of the case in amended bill by trustee for Turner & Foshee, Jr., in cases Nos. 977 and 978.

The foregoing will suffice as a statement of general rules that obtain which were adverted to in passing on demurrers to the several bills as amended.

The correspondence that ensued between complainant mortgagee and mortgagor, is exhibited in the original bill as amended. The initial agreement of December 17, 1931, is as follows:

"December 17th, 1931.
"John Lawrence Lavretta
"On today after a discussion of his affairs with John Lawrence Lavretta, we advised him that it will be necessary for him, if he wanted to save his properties from mortgage foreclosure, to adopt the following course, viz:

"Turn over as his sole agents to Duggan-Taylor Realty Company in writing, all of his real estate in Mobile, with authority to them to rent it out and collect all rents, he agreeing not to interfere with them or in any way attempt to collect any of the rents himself. That Duggan & Taylor would forthwith ascertain his annual interest, insurance and tax charges and begin immediately out of the rent collected to set aside monthly a sufficient amount of money from his rents to take care at the end of each year of all such interest, tax and insurance charges. Any excess over the amount so set aside monthly shall be payable to Mr. Lavretta. That Duggan & Taylor shall under no circumstances anticipate collection of rents or advance to Mr. Lavretta any excess not actually in hand.

"D. P. Bestor, Jr."

Transcript—Case No. 976, page 30.

The bill then recites the following:

"There was no agreement or understanding between said John Lawrence Lavretta

and said D. P. Bestor, Jr., as to how long complainant would defer foreclosure of its said mortgages if said course outlined in said memorandum should be adopted by said Lavretta or how long said John Lawrence Lavretta would follow said course.

"Fourth. Thereafter, the said John Lawrence Lavretta, and complainant, acting through its President, discussed the course suggested by complainant as set forth in said written memorandum, and said John Lawrence Lavretta agreed that he would adopt the course outlined in said written memorandum provided he could retain the use of his home number 456 Government Street, and the use of the lower floor number 26 S. Royal Street, and could exclude from the property to be handled by Duggan-Taylor Realty Company, the store number 105 S. Royal Street, and complainant thereupon agreed that said properties be excluded from the properties to be turned over to the said Duggan-Taylor Realty Company, and said Lavretta agreed to adopt the course suggested in said memorandum as so modified.

"Shortly thereafter, the respondent John Lawrence Lavretta, caused to be prepared and executed and delivered to Duggan-Taylor Realty Company a letter. * * *"

The letter referred to above listed properties of the said John Lawrence Lavretta. The letter dated December 22, 1931, is as follows:

"In line with agreement with Mr. D. P. Bestor, President of the First National Bank of Mobile, regarding rentals on my properties here, I authorize you as my agents to make leases for said properties, to collect all rentals and hold them for account of the First National Bank and make monthly deposits with them of said collections with account attached and I am to in no way interfere or collect any of said accounts. (Here follows list of properties)

"At the time of writing of said letter of December 22, 1931, to the said Duggan-Taylor Realty Company, and for several months prior thereto, the said Duggan-Taylor Realty Company were the rental agents for the said John Lawrence Lavretta for much of the property described in said letter."

The last averment is contained in each amended bill, as follows:

"The said Duggan-Taylor Realty Company, pursuant to the authority vested in them by said letter of December 22, 1931, and as agents for said John Lawrence Lavretta, proceeded to collect the rents from the property described in said letter and to enter all such rents in an account on its books to the credit of said John Lawrence Lavretta and to make leases in the name of said John Lawrence Lavretta, by it, as the agents of said John Lawrence Lavretta, and to insure the properties covered by said mortgages and to pay the premiums therefor, and generally to manage the said properties as the agents of the said John Lawrence Lavretta, and from time to time, made payments to complainant of portions of the rents so collected, but the said Duggan-Taylor Realty Company has never made monthly deposits with the complainant and has never set aside, monthly a sufficient amount of money from the rents collected by it from the properties described in said letter of December 22, 1931 to take care at the end of each year of all interest on the mortgage debts, all taxes due on the mortgaged property, and all premiums on insurance on the mortgaged property, and said rents have at no time since December 22, 1931, been sufficient for such purpose.

"Said Duggan-Taylor Realty Company also paid to said John Lawrence Lavretta, and to persons at his request, and for his use, from time to time, portions of said rents so collected by it, under and pursuant to said letter of December 22, 1931, which said rents so paid to Lavretta, or for him, amounted to towit: $1,126.80."

Thus each bill as amended shows a conditional agreement and avers that the condition thereof was not complied with. This is shown by the correspondence exhibited and the conversations alleged to have taken place. These averments show that appellee never accepted the acts of Lavretta as in compliance with the conditions of the agreement, but asserted its right to foreclose for default. Lavretta withdrew from said agents $1,180 of the proceeds from payments of rents and appropriated it to his personal use, and the provisions for suspension of right of foreclosure, according to the averments, became inoperative by reason of Lavretta's failure to carry out the provisions of the contract looking to extension. Not only did the agency fail to set aside sums sufficient to meet the accruing debt, interest, and taxes, but also permitted Lavretta to withdraw some of the moneys collected for his personal use, which was not provided for in the contract.

When the whole correspondence, which is exhibited, is considered, it is apparent that its requirements were not only not

waived, but insisted upon to appellant mort-gagor. On January 22, 1932, the president of the bank wrote mortgagor, saying:

"You have maturing with us on December 15th, your $16,560.00 note secured by a mortgage on certain of your real estate in Mobile. You also have maturing with us on December 17th, the $765.25 note secured by 100 shares of Commonwealth and Southern Common Stock.

"These matters have now been running past due for some time and we should appreciate your calling by the bank and letting us know what the situation is. You know, of course, that we cannot indefinitely carry this paper in this shape and something must be done about it in the immediate future."

To like effect is the letter of March 10, 1932, which is as follows:

"According to our records you now have two notes past due with us, viz: $750.00 due December 17th, on which interest has accrued to March 1st, of $24.63, $16,000.00 due December 15th, 1931 on which there has accrued $772.52. The interest also on your $44,000 mortgage fell due on the 1st instant, and was not paid—this amounts to $1,320.00. The total of interest due us by you, therefore, on March 1st, amounted to $2,117.15.

"Of course you know that we cannot permit this situation to continue and some arrangement must be made with us to put these notes in proper shape. * * *"

Again on March 16, 1932, the bank wrote:

"In addition to the interest outlined in our letter to you of the 10th, inst., you also owe us as Trustee for the Turner and Foshee Estates, approximately $725.00 additional interest, making a total in all of something between $2,800.00 and $3,000.00 of accrued and past due interest due us.

"As advised you in our letter of the 10th, we cannot carry these matters in this shape any longer. * * *"

Later on March 31, 1933, the vice president and trust officer advised Lavretta, as follows:

"The Advisory Committee for the Trust Department has instructed me to advise you that it will be necessary for us to take some steps to correct the defaults existing under the two mortgages we have of yours here in the trust department.

"If this is not done, unfortunately there will be nothing else for us to do but foreclose, which we will, of course, regret very much to do."

Again on April 19, 1934, Mr. Bestor wrote Mr. Lavretta, stating:

"For a number of months we have been willing to permit you to collect some of the rental of the property on Royal Street covered by your mortgage to us. We have done this in the hope that conditions would so improve in the real estate market that an advantageous sale of this property and other properties mortgaged to us by you, could be made at a figure which would bring us out whole. We also as Trustee have permitted you and your family to occupy your home on Government Street without rent.

"In the mean time, the taxes which have accrued are unpaid—the interest on the mortgages is unpaid—other claims against the property are in the same shape.

"For these reasons we feel that we cannot continue to allow the present situation to run on further and so, therefore, regret exceedingly to have to advise you that beginning May 1st, the rentals from your property mortgaged to us will have to be paid over to us and that further, you must make some arrangements with our Trust Department for the payment of some reasonable rental on your home.

"We exceedingly hope that you will immediately make some arrangements to comply with the above outline of our wishes."

And the record, case No. 976, p. 38, further states that, "After the receipt of said letter of April 19, 1934, the said John Lawrence Lavretta requested that complainant allow him additional time before requiring that all rents be paid to the complainant and the complainant thereupon agreed to wait until July 1st, 1934, before requiring the payment of all rents to it."

On April 25, 1934, the bank further informed Lavretta, that,

"In order that you may appreciate the situation of your loans with us we give you the following figures:

Due our Commercial Department
    Total in principal ........ $63,397.47
    Accrued and defaulted
        interest ........... $ 8,094.17
Due our Trust Department
    Total in principal ........ $18,333.33
    Accrued and defaulted
        interest ............. $ 1,569.29

"In addition to the above delinquent interest, there is, as you know, a rather large aggregate of default State, County, and City taxes, paving assessments, etc.

"We have permitted this situation to remain dormant in the hope there would be an opportunity for the sale of some of your property under conditions which would relieve your unsatisfactory status with us. We have waited for this month after month without result. * * *"

It is then averred in amended bills, as follows:

"Subsequent to July 1, 1934, complainant notified respondents in substance that it would proceed to foreclose the two mortgages made by respondents to complainant as Trustee, whereupon the respondents or one of them, represented to complainant that they were endeavoring, either to arrange with someone to take over said mortgages or to purchase some of the properties for enough to pay off the said mortgages held by complainant, and requested that complainant defer any foreclosure proceedings so as to give respondents an opportunity to refund its mortgages, and such delay was granted. The said John Lawrence Lavretta in conversation prior to September 19, 1934, stated to complainant in substance that complainant could not foreclose its mortgages because of a letter or memorandum written by President of complainant, on December 17, 1931, whereupon the trust officer of complainant replied in substance that he did not think the said letter had any effect on mortgages in the Trust Department of complainant, but that if said Lavretta contended that it did, then he gave said Lavretta notice of its discontinuance, and would give him a reasonable time in which to correct the default in said mortgages, and if he did not correct said defaults, complainant would foreclose said mortgages in the Trust Department. After said conversation, complainant waited for more than one month and then on September 19, 1934, and on subsequent dates, published notices of foreclosure of the said mortgage made by respondents to complainant as Trustee under the will of W. Marshall Turner and as Trustee for Samuel S. Foshee, Jr., and said sales were made and the complainant as Trustee for Samuel S. Foshee, Jr., became the purchaser of the property. * * * After the said foreclosure sales had been made, complainant through its attorney demanded possession of the property on the Northeast corner of Government and Lawrence Streets, including 456 Government Street, which notice was presented to respondents or one of them. Promptly after the service of said notice the said Leota Lawrence Lavretta and several of her friends appealed to the complainant not to deprive respondents of the possession of 456 Government Street, and pursuant to said request complainant withdrew the demand notice and then endeavored to work out an arrangement whereby the said respondents could continue to live in their residence, by paying to complainant some reasonable rent for it, but no such arrangement was ever consummated.

"During the year 1935, and prior to September 10, 1935, respondents had many conferences with complainant's officers, in which conferences, different suggestions and proposals were made by Mrs. Leota Lawrence Lavretta and by complainant, in an effort to enable respondents to redeem the property already foreclosed and avoid foreclosure of remaining property, and at one of these conferences complainant offered to make a flat reduction of $10,000.00 from the debts secured by mortgages held in the Commercial part of the Bank, if respondents would pay said mortgages.

"On another occasion, complainant offered to permit the redemption of the home, 456 Government Street, by paying $5,600.00. * * *

"A short while before September 10, 1935, Leota Lawrence Lavretta stated to D. P. Bestor, Jr., President of Complainant, in substance that there was nothing further that respondents could do, and that all that was left to complainant to do, was to exercise its rights under the mortgages and foreclose, but at the same time stated in substance that she had been advised that complainant had no right to foreclose at all."

It is to be noted from averments in the amended bill that on March 22, 1932, Lavretta borrowed from the bank $2,647.47, with which to pay interest on the original debt in order to prevent foreclosure. This indicated that the bank had not agreed, and did not understand or intend, that foreclosure would not be resorted to upon failure of payment of interest, insurance, and taxes; and that Lavretta recognized this construction as respondents' conception of the agreement and acted upon it when he borrowed $2,647.47 with which to pay defaulting interest, etc., therefrom.

■ Passing to the other phases of the cases, no time being fixed in the agreement of December 17, 1931, if the contract was not terminable at will, it was subject to the rule of a "reasonable time." The contract

did not provide how long the bank would delay foreclosure of the mortgages, though Lavretta failed to comply with its conditions. As to this, the agreement is silent. It could hardly be said that the bank would suspend foreclosure indefinitely after the realty company ceased to set aside sufficient moneys to pay interest, insurance, and tax charges. The question recurs, Does the pleading show that a "reasonable time," as a matter of law, had expired when the bills were filed?

At this juncture it will be observed that rescission must be of the whole contract unequivocally without reservation. Lowy et al. v. Rosengrant, 196 Ala. 337, 342, 71 So. 439; Strauss v. Meertief, 64 Ala. 299, 38 Am.Rep. 8; Stephenson v. Allison et al., 123 Ala. 439, 26 So. 290; and Elliott v. Howison, 146 Ala. 568, 40 So. 1018. When the tenor of the entire correspondence is understood and that of the final letter of September 10, 1935, by Mr. Bestor, as president of complainant, and reply of Mr. Lavretta of September 18, 1935, the conclusion is inescapable that the whole plan was rescinded unequivocally and without reservation; that Mr. Lavretta so understood the situation and replied regretting that the management of the properties under "our agreement," December 17, 1931, had not produced better results since the properties were placed exclusively with the nominee of the bank; that Mr. Lavretta could have had no other intelligence, from Mr. Bestor, as president of complainant, showed by his correspondence his expressed hope that the whole matter might be worked out without loss to the bank or ruin to Mr. Lavretta, asking further co-operation to that end. We cannot agree that there was a partial rescission, as argued by the distinguished counsel for appellant. The effect of the reference to properties on "Royal street, between Dauphin and Conti," in letter dated September 10, 1935, only brought on conclusion of the whole matter, final rescission as to the whole plan, and the giving of "reasonable time to adjust your (Mr. Lavretta's) matters"—referring to all the mortgages.

The bank's letter of September 23, 1935, to the Duggan-Taylor Realty Company fixed the date of cessation of activities as September, 1935, and this is indicated in the reply to the bank by the realty company and in Mr. Lavretta's reply to the realty company. Pertinent letters in this regard are:

"I have your letter of September 27th, but I do not recognize the right of the First National Bank to terminate the agreement, under which the property which you mention was placed in your hands, on the 30th day of September, 1935. My understanding on the contrary is, that this agreement is still in force and will continue to remain in force after September 30, 1935, which the Bank fixes as the date when it will be terminated. Under that agreement, you were to account to the Bank and I was not to interfere with your management, and I have, therefore, no orders or directions to give you at this time."

This letter, just quoted, was forwarded to the bank by the realty company, and the bank replied:

"We are returning you herewith letter to you from John Lawrence Lavretta bearing date of September 30th, 1935, having reference to the handling of the rents from some of his properties mortgaged to us. Our letter to you of September 23, 1935, on the same subject is final so far as we are concerned."

The record then shows the effort to avert foreclosure and to secure further extension of time to December 1, 1935, when the bank said in its letter of October 14, 1935, " * * * to either make satisfactory arrangements with us for renting the property you are now occupying as your residence, which was foreclosed by us, or else to give us possession of it at that time."

The complainant's president, on October 31, 1935, closed the correspondence, saying:

"Dear Mr. and Mrs. Lavretta:

"We will discontinue the proceedings already started for foreclosure sale of your property covered by mortgage which is recorded in Mortgage Book 113 N.S. pages 278 et seq., for which notice has been published in the Mobile Register.

"We will accept the sum of $47,500.00 in settlement of the indebtedness secured by said mortgage if paid by December 10, 1935. Unless by December 10, 1935 you have made some reasonable arrangement about the said indebtedness, we expect to then start proceedings for foreclosure of said mortgage.

"If there are any errors in our statement of your indebtedness to us, and you will point them out to us, we will be glad to correct them."

The instant bills were filed in chancery court on January 29, 1936.

The pleading and exhibits show that Duggan-Taylor Realty Company were

the agents of appellant. In the agreement of December 17, 1930, Bestor stipulated that Lavretta was to "turn over as his sole agents to Duggan-Taylor Realty Company in writing, all of his real estate in Mobile" and in line with this agreement, Lavretta authorized said realty company, as his agents "to make leases * * * collect all rentals and hold them for account of the First National Bank." Davis v. Patrick, 122 U.S. 138, 7 S.Ct. 1102, 30 L.Ed. 1090.

Therefore, the bank was not required to enforce collection by Lavretta's agent and to make monthly accountings. However, this may be, the bills as amended allege there were not sufficient funds in the hands of the realty company to pay interest, etc. Therefore, the realty company could not have complied with request had demand been made on them for such remittances to prevent a default. We have indicated that the effect of the letter of September 10, 1935, was to end the agency of the realty company on October 1, 1935. There was no undue haste, or surprise, or undue advantage taken by the mortgagee in the notice and delay in the filing of the bill.

The bank's rights are fixed by the mortgage and its power of sale is an important part of that security, and it may foreclose irrespective of hardships. Rudisill Soil Pipe Co. et al. v. Eastham Soil Pipe & Foundry Co., 210 Ala. 145, 97 So. 219; Pruett v. Commercial Nat. Bank of Anniston, 230 Ala. 225, 160 So. 540, and McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729.

In view of the contention made by mortgagor that the foreclosures under powers of sale in said mortgages were premature in that said mortgages were brought within the terms of the extension agreement, as to the other mortgages, the complainant was justified in disregarding its former attempted foreclosures, and in treating the same as if there had been no such proceeding. Having been induced to so treat the former proceeding by reason of such contention, the latter cannot take a different position in equity by reason of the fact that complainant acquiesced in and adopted respondent's view and proceeded by foreclosure in equity, after having theretofore duly terminated the extension agreement. On principle, this case, in the respect indicated cannot be differentiated from the holding in the recent case of Estes v. Metropolitan Life Ins. Co., 232 Ala. 656, 169 So. 316, or Morton Hardware Co. v. Barranco, 233 Ala. 346, 172 So. 109; Bromberg v. First Nat. Bank, etc., post, p. 226, 178 So. 48.

Equity does not require the doing of a foolish act. Possession and foreclosure were not inconsistent remedies that may be taken on the part of a mortgagee after default. Rountree et al. v. Satterfield, 211 Ala. 464, 100 So. 751. When there was serious insistence or doubt of efficiency of said foreclosures under the powers contained in the mortgages, and the mortgagor having invoked the mortgagee by his claim of invalidity, he cannot defeat mortgagee's resort to equity to clear up its title by a foreclosure. Such action did not injure the mortgagor, but extended his time for redemption, which will run from the date of the final decree to be entered and sale made pursuant thereto.

The bill in Henderson Law Co. v. Wilson, 161 Ala. 504, 49 So. 845, was to restrain premature and oppressive foreclosure, and is not the rule of the pleading that is before us as to the instant bills, seeking foreclosure after alleged defaults.

It is not necessary to consider in detail the alleged application of moneys received from the appellant's agent, or the charges to be made against the mortgages. That will be done on submission of all the evidence and a final decree under the rules that obtain in a court of equity.

It follows that there was no error in the trial court overruling demurrers of respondent in the several cases, to wit, 976, 977, 978, 980, and 981.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.